Opinion
BAXTER, J.
The Legislature has long demonstrated a strong resolve to protect children from sexually inappropriate conduct of all kinds, including sexual intercourse and oral copulation. Depending on the nature of the conduct and the ages of the offender and the minor victim, conviction of a sexual contact crime may subject the offender to incarceration, civil penalties, and other consequences. One of the significant consequences includes application of the Sex Offender Registration Act (Pen. Code, § 290 et seq.),[1] which was enacted to prevent recidivism of sex offenders and facilitate their surveillance by police. As relevant here, the act allows for discretionary sex offender registration for those convicted of unlawful sexual intercourse with a minor (§§ 261.5, 290.006), but imposes mandatory registration for those convicted of crimes involving other types of sexual activity with a minor (§ 290, subds. (b), (c)).
This court previously addressed this statutory disparity in People v. Hofsheier (2006) 37 Cal.4th 1185 [39 Cal.Rptr.3d 821, 129 P.3d 29] (Hofsheier). Hofsheier interpreted the federal and state equal protection clauses as invalidating mandatory sex offender registration for a 22-year-old defendant convicted of nonforcible oral copulation with a person 16 years of age (§ 288a, subd. (b)(1)), for the reason that a same-aged defendant convicted of unlawful sexual intercourse with a same-aged minor (§ 261.5) is subject to discretionary registration.[2] (See U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) Although Hofsheier attempted to limit its holding to the factual circumstances before it, the Courts of Appeal have *875 extended Hofsheier’s reach to additional sex crimes involving adult offenders and minor victims of various ages and age differences, including crimes involving offenders 30 years or older or victims under 16 years of age. (See post, at p. 878.)
Plaintiff James Richard Johnson seeks to invoke Hofsheier in the context of his conviction for nonforcible oral copulation by an adult over 21 years with a person under 16 years of age. (§ 288a, subd. (b)(2).) At this juncture, however, continued judicial nullification of mandatory registration is denying significant effect to the legislative policy choices embodied in the Sex Offender Registration Act. Because the Legislature cannot restore the constitutional validity of requiring registration for statutorily enumerated crimes without making registration mandatory for unlawful sexual intercourse, we deem it prudent to revisit Hofsheier’s merits.
Upon reexamination, we find Hofsheier’s constitutional analysis faulty. In particular, it mistakenly concluded that no rational basis exists for subjecting intercourse offenders and oral copulation offenders to different registration consequences. Although Hofsheier accepted the reasonableness of the Legislature’s determination that, generally, mandatory registration promotes the policy goals of preventing recidivism and facilitating surveillance of sex offenders who prey on underage victims, the decision failed to adequately appreciate that, among sex offenses, intercourse is unique in its potential to result in pregnancy and parenthood. Given that unique potential, legislative concerns regarding teen pregnancy and the support of children conceived as a result of unlawful sexual intercourse provide more than just a plausible basis for allowing judicial discretion in assessing whether perpetrators of that crime should be required to register, while mandating registration for perpetrators of other nonforcible sex crimes.
Like the United States Supreme Court, “[w]e do not lightly reconsider a precedent” and are mindful that “stare decisis is the ‘preferred course’ in constitutional adjudication.” (United States v. Dixon (1993) 509 U.S. 688, 711, 712 [125 L.Ed.2d 556, 113 S.Ct. 2849].) But Hofsheier’s flawed constitutional analysis is having a broad impact, and “ ‘correction through legislative action is practically impossible.’ ” (Payne v. Tennessee (1991) 501 U.S. 808, 828 [115 L.Ed.2d 720, 111 S.Ct. 2597].) Accordingly, we acknowledge People v. Hofsheier, supra, 37 Cal.4th 1185 was in error and hereby overrule it.
Factual and Procedural Background
In 1990, a five-count complaint was filed against James Richard Johnson, alleging two counts of lewd acts upon a child under 14 years of age, a felony *876 (§ 288, subd. (a)), one count of nonforcible sodomy with a minor under 16 years of age, a felony (§ 286, subd. (b)(2)), and two counts of nonforcible oral copulation by a person over 21 years of age with a minor under 16 years of age, a felony (§ 288a, subd. (b)(2) (hereafter section 288a(b)(2)). All of these counts named the same girl as the alleged victim. Johnson, who was 27 years old at the time of the alleged conduct, pleaded guilty to a single count of felony nonforcible oral copulation in violation of section 288a(b)(2). As part of that plea, Johnson initialed and signed a declaration in which he acknowledged: “If I plead guilty to any sex crime covered by Penal Code Section 290, I will be required to register as a sex offender . . . .” Johnson’s section 288a(b)(2) conviction resulted in a two-year prison sentence and mandatory sex offender registration under section 290.
In 2006, our Hofsheier decision found an equal protection violation in section 290’s mandatory registration provision for a different subdivision of section 288a, i.e., section 288a, subdivision (b)(1) (hereafter section 288a(b)(1)), which is an alternative felony/misdemeanor “wobbler” offense. (Hofsheier, supra, 37 Cal.4th at pp. 1192-1193.) Citing Hofsheier and its progeny, Johnson filed a petition for a writ of mandate in superior court in 2011, seeking his removal from the sex offender registry maintained by the California Department of Justice and relief from future registration obligations. (See People v. Picklesimer (2010) 48 Cal.4th 330 [106 Cal.Rptr.3d 239, 226 P.3d 348].) The superior court denied the petition in reliance on People v. Manchel (2008) 163 Cal.App.4th 1108 [78 Cal.Rptr.3d 194] (Manchel), a case that had rejected a Hofsheier claim by a 29-year-old defendant convicted of section 288a(b)(2), the same felony oral copulation offense at issue here.
In reversing the superior court judgment, the Court of Appeal agreed with other appellate decisions that criticized Manchel’s holding and rationale. (See People v. Luansing (2009) 176 Cal.App.4th 676 [97 Cal.Rptr.3d 836] (Luansing); People v. Ranscht (2009) 173 Cal.App.4th 1369 [93 Cal.Rptr.3d 800] (Ranscht).) Finding that section 290’s registration requirement violated Johnson’s equal protection rights, the court remanded the matter to the superior court for a determination whether he should be required to register under the discretionary registration provision in section 290.006.
We granted review to decide whether Johnson is entitled to relief under Hofsheier’s equal protection analysis. Thereafter we requested briefing on whether this court should overrule Hofsheier, and if so, whether our decision should apply retroactively.
Discussion
Section 290 is a key provision of California’s Sex Offender Registration Act that “ ‘applies automatically’ ” to section 288a and the other offenses *877 enumerated therein, and “ ‘imposes on each person convicted a lifelong obligation to register.’ [Citations.] Registration is mandatory [citation], and is ‘not a permissible subject of plea agreement negotiation’ [citation].” (Wright v. Superior Court (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101] (Wright).)
Section 290 “is intended to promote the ‘ “state interest in controlling crime and preventing recidivism in sex offenders” ’ ” (Wright, supra, 15 Cal.4th at p. 527) and serves “an important and vital public purpose by compelling registration of many serious and violent sex offenders who require continued public surveillance” (Hofsheier, supra, 37 Cal.4th at p. 1208; see Wright, at p. 527). Children, in particular, “are a class of victims who require paramount protection” from sex offenders (People v. Tate (1985) 164 Cal.App.3d 133, 139 [210 Cal.Rptr. 117]), and mandating lifetime registration of those who prey on underage victims serves “to notify members of the public of the existence and location of sex offenders so they can take protective measures” (Hofsheier, at p. 1196).
A. Hofsheier and Its Progeny
In Hofsheier, supra, 37 Cal.4th 1185, the defendant claimed section 290’s provision for mandatory registration of persons convicted of nonforcible oral copulation with a minor 16 or 17 years of age (§ 288a(b)(1)) violated his rights under the federal and state constitutional equal protection clauses, because persons convicted of unlawful sexual intercourse with a minor of 16 or 17 years of age (§ 261.5) were subject to discretionary sex offender registration under former section 290, subdivision (a)(2)(E) (now § 290.006).[3] Hofsheier analyzed this equal protection claim in two steps.
Hofsheier first assessed whether, for purposes of sex offender registration, those convicted of nonforcible oral copulation are “ ‘similarly situated!’ ” to those convicted of unlawful sexual intercourse. (Hofsheier, supra, 37 Cal.4th at p. 1199.) Hofsheier answered this question in the affirmative, stating “[t]he *878 only difference” between nonforcible oral copulation under section 288a(b)(1), which mandates registration, and unlawful sexual intercourse under section 261.5, which does not, is “the nature of the sexual act.” (Hofsheier, at p. 1200.)
Hofsheier next examined whether a “rational basis” supports the statutory classification mandating lifetime sex offender registration by a person convicted of nonforcible oral copulation with a 16-year-old minor (§ 288a(b)(l)), but not by a person convicted of unlawful sexual intercourse with a 16-year-old minor (§ 261.5). (Hofsheier, supra, 37 Cal.4th at p. 1201.) While conceding there may be a rational basis to subject both categories of offenders to mandatory registration (id. at pp. 1202, 1207), Hofsheier could find no plausible basis — that is, no reasonably conceivable factual basis — for restricting application of the discretionary registration provision to the offenders convicted of unlawful intercourse (id. at pp. 1202-1204). Hofsheier therefore concluded that section 290’s registration mandate violated the equal protection rights of section 288a(b)(1) offenders. (Hofsheier, at pp. 1206-1207.)
Although Hofsheier attempted to limit its holding to the factual circumstances before it, the Courts of Appeal have extended its application to additional nonforcible sex offenses covered by section 290. (E.g., People v. Thompson (2009) 177 Cal.App.4th 1424, 1430-1431 [100 Cal.Rptr.3d 57] [Hofsheier extended to 36-year-old defendant convicted of nonforcible sodomy with 17-year-old minor (§ 286, subd. (b)(1))]; Luansing, supra, 176 Cal.App.4th at p. 685 [30-year-old defendant convicted of nonforcible oral copulation of minor under 16 years (§ 288a(b)(2))]; Ranscht, supra, 173 Cal.App.4th at p. 1375 [18-year-old defendant convicted of nonforcible digital penetration of 13 year old (§ 289, subd. (h))]; In re J.P (2009) 170 Cal.App.4th 1292, 1299-1300 [89 Cal.Rptr.3d 17] [nonforcible oral copulation between 12-year-old juvenile and minor under 18 years (§ 288a(b)(1)), though minor in fact was under 14]; see People v. Ruffin (2011) 200 Cal.App.4th 669, 673-675 [133 Cal.Rptr.3d 27] [Hofsheier extended to defendant convicted of nonforcible oral copulation while incarcerated (§ 288a, subd. (e)), because prison guards convicted of nonforcible oral copulation with prisoners (§ 289.6, subd. (a)(2)) are subject to discretionary registration].)[4] Consequently, Hofsheier’s equal protection analysis is denying significant effect to section 290.
*879 Here, the parties dispute Hofsheier’s expansion to the crime for which Johnson was convicted. Three Court of Appeal decisions squarely hold Hofsheier’s equal protection analysis logically applies to the offense of nonforcible oral copulation with a minor under 16 years (§ 288a(b)(2)). (Luansing, supra, 176 Cal.App.4th at p. 685; People v. Hernandez (2008) 166 Cal.App.4th 641, 648-651 [83 Cal.Rptr.3d 29]; People v. Garcia (2008) 161 Cal.App.4th 475, 481-482 [74 Cal.Rptr.3d 681].) One Court of Appeal decision, however, distinguished Hofsheier and upheld mandatory registration for a section 288a(b)(2) conviction where, as here, the ages of the offender and the victim rendered the offender additionally subject to prosecution for lewd conduct under section 288, subdivision (c)(1) (section 288(c)(1)). (Manchel, supra, 163 Cal.App.4th at p. 1115.) Manchel’s efforts to distinguish Hofsheier were criticized in Luansing, supra, 176 Cal.App.4th at pages 683-685, and in cases involving offenses other than section 288a(b)(2). (E.g., Ranscht, supra, 173 Cal.App.4th at pp. 1373-1374; In re J.P., supra, 170 Cal.App.4th at pp. 1297-1299.)
We need not resolve whether Manchel properly distinguished Hofsheier. As we shall explain, Hofsheier’s equal protection analysis is fundamentally flawed and deserves to be overruled.
B. Stare Decisis
It is a familiar axiom that “[s]tare decisis is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.” (Payne v. Tennessee, supra, 501 U.S. at p. 827.) “Adhering to precedent ‘is usually the wise policy, because in most matters it is more important that the applicable rule of law be settled than it be settled right.’ ” (Ibid.)
Nonetheless, we, as the highest court in California, should not feel constrained to follow “unworkable” or “badly reasoned” decisions, any more than the United States Supreme Court does. (Payne v. Tennessee, supra, 501 U.S. at p. 827; see Seminole Tribe of Fla. v. Florida (1996) 517 U.S. 44, 63 [134 L.Ed.2d 252, 116 S.Ct. 1114].) “This is particularly true in constitutional cases . . . ,” where, as here, “ ‘correction through legislative action is practically impossible.’ ” (Payne, at p. 828; accord, Board of Supervisors v. Local Agency Formation Com. (1992) 3 Cal.4th 903, 921 [13 Cal.Rptr.2d 245, 838 P.2d 1198] [“stare decisis compels less deference to precedent when constitutional principles are applied to deny effect to an enactment”].) *880 Erroneous precedent need not be dated or widely criticized to warrant overruling. (E.g., United States v. Dixon, supra, 509 U.S. at pp. 711-712, overruling Grady v. Corbin (1990) 495 U.S. 508 [109 L.Ed.2d 548, 110 S.Ct. 2084]; Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison (1998) 18 Cal.4th 739, 762-763 [76 Cal.Rptr.2d 749, 958 P.2d 1062], overruling ITT Small Business Finance Corp. v. Niles (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965]; People v. Ewoldt (1994) 7 Cal.4th 380, 398-401 [27 Cal.Rptr.2d 646, 867 P.2d 757], overruling People v. Tassell (1984) 36 Cal.3d 77 [201 Cal.Rptr. 567, 679 P.2d 1] & People v. Ogunmola (1985) 39 Cal.3d 120 [215 Cal.Rptr. 855, 701 P.2d 1173].)
As detailed below, Hofsheier failed to recognize that, with regard to sex offender registration, concerns regarding recidivism, teen pregnancy, and child support obligations provide a rational basis for treating offenders who engage in unlawful sexual intercourse differently from those engaging in nonforcible oral copulation. Hofsheier’s faulty analysis has now resulted in a number of sex crimes against minors being judicially excluded from mandatory registration, despite the legislative intent to exclude only one. Hofsheier, moreover, leaves the Legislature with a classic Hobson’s choice: If the Legislature wishes to effectuate its policy judgment that mandatory registration is appropriate for sex offenders convicted of crimes other than unlawful intercourse, then the only option realistically available is to add section 261.5 to section 290’s list of mandatory offenses — but that is precisely what the Legislature has repeatedly refused to do in light of the unique potential for pregnancy and parenthood that attends section 261.5 offenses.
Given the broad consequences of Hofsheier’s equal protection analysis and the Legislature’s inability to take corrective action, we shall not allow principles of stare decisis to block correction of this error in our constitutional jurisprudence. (Board of Supervisors v. Local Agency Formation Com., supra, 3 Cal.4th at p. 921.)[5]
*881 C. Hofsheier’s Rational Basis Analysis Is Demonstrably Wrong
Here, as in Hofsheier, there is no reason to suppose that analysis under the federal equal protection clause would lead to a result different than that obtained under a state clause analysis. While our court has authority to construe our state Constitution independently (Manduley v. Superior Court (2002) 27 Cal.4th 537, 571-572 [117 Cal.Rptr.2d 168, 41 P.3d 3]), we agree with our approach in Hofsheier that, in a case such as this, the high court’s analysis of federal due process and equal protection principles are persuasive for purposes of the state Constitution. (See Hofsheier, supra, 37 Cal.4th at pp. 1199-1201; see also People v. Turnage (2012) 55 Cal.4th 62, 74-79 [144 Cal.Rptr.3d 489, 281 P.3d 464] (Turnage); Manduley, at pp. 571-572.)
Both Hofsheier and this matter involve a claimed equal protection violation based on the circumstance that section 290 includes oral copulation (§ 288a), but not unlawful sexual intercourse (§ 261.5), on its list of offenses mandating sex offender registration; unlawful intercourse is instead subject to discretionary registration under section 290.006 (see former § 290, subd. (a)(2)(E)). Hofsheier involved a 16-year-old victim (§ 288a(b)(1)), while this case involves a victim under 16 years of age (§ 288a(b)(2)).
Where, as here, a disputed statutory disparity implicates no suspect class or fundamental right, “equal protection of the law is denied only where there is no ‘rational relationship between the disparity of treatment and some legitimate governmental purpose.’ ” (Turnage, supra, 55 Cal.4th at p. 74, quoting Heller, supra, 509 U.S. at p. 320.) “This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [(Heller, at p. 320.)] While the realities of the subject matter cannot be completely ignored (id. at p. 321), a court may engage in ‘ “rational speculation” ’ as to the justifications for the legislative choice (id. at p. 320). It is immaterial for rational basis review ‘whether or not’ any such speculation has ‘a foundation in the record.’ ” (Turnage, at pp. 74-75.) To mount a successful rational basis challenge, a party must “ ‘negative every conceivable basis’ ” that might support the disputed statutory disparity. (Heller, at p. 320; see Turnage, at p. 75.) If a plausible basis exists for the disparity, courts may not second-guess its “ ‘wisdom, fairness, or logic.’ ” (Heller, at p. 319; see Turnage, at p. 74.)
As noted, it is settled that section 290’s lifetime registration requirement legitimately intends to “promote the ‘ “state interest in controlling crime and preventing recidivism in sex offenders.” ’ ” (Wright, supra, 15 Cal.4th at *882 p. 527.) Moreover, there is no doubt that mandatory registration for sex offenders who prey on underage victims is rationally related to that important and vital public purpose. (See Hofsheier, supra, 37 Cal.4th at p. 1207.) Accordingly, an equal protection challenge can be sustained only if section 261.5 offenders and section 288a offenders are similarly situated, and if the challenger “ ‘negative[s] every conceivable basis’ ” that might support section 261.5’s omission from section 290’s list of offenses subject to mandatory registration. (Heller, supra, 509 U.S. at p. 320; see Turnage, supra, 55 Cal.4th at pp. 74-75.)
Hofsheier concluded that, despite the different sex acts involved, persons convicted of nonforcible oral copulation with minors and persons convicted of unlawful sexual intercourse with minors are similarly situated so as to merit an examination whether distinctions between the two groups justify unequal registration treatment. (Hofsheier, supra, 37 Cal.4th at pp. 1199-1200.) We need not reconsider this conclusion, because, in any event, we find Hofsheier erroneous in its rational basis analysis. As explained below, the nature and potential consequences of unlawful sexual intercourse provide actual and plausible rationales for the Legislature’s omission of section 261.5 from section 290’s list of offenses.
In Hofsheier, this court professed to find no plausible rationale or reasonably conceivable factual basis that would justify different registration consequences for persons convicted of nonforcible oral copulation with a minor and those convicted of unlawful sexual intercourse with a minor of the same age. In particular, Hofsheier found the difference in treatment reflects “a historical atavism dating back to a law repealed over 30 years ago that treated all oral copulation as criminal regardless of age or consent.” (Hofsheier, supra, 37 Cal.4th at p. 1206.) Hofsheier essentially assumed that, once consensual sexual conduct between adults was decriminalized in 1975, the Legislature never affirmatively decided to impose mandatory registration on those convicted of nonforcible oral sex with minors. (Id. at pp. 1206-1207.) For this reason, Hofsheier viewed section 290’s current listing of nonforcible section 288a offenses as lacking a rational basis.
Upon reconsideration of the matter, and contrary to the dissent’s speculation, we find the notion of legislative inattention does not persuasively explain section 290’s continued listing of nonforcible section 288a offenses. First, despite numerous amendments and reenactments over the years (at least 10 since 1993), section 290 has continued to include all forcible and nonforcible section 288a offenses. There is no indication this has resulted from multiple oversights on the Legislature’s part. Second, the year after Hofsheier was decided, the Legislature repealed and reenacted section 290 and enacted section 290.019. (Stats. 2007, ch. 579, § 27, p. 4823.) That *883 statute reflects an express policy decision that relief from section 290’s registration requirement is warranted only for persons who demonstrate that their section 288a or section 286 conviction was for “conduct between consenting adults,” and not for those whose crimes involved minor victims. (§ 290.019, subd. (a).) Third, it is notable that, earlier this year, the Legislature actually considered and rejected a bill that proposed to conform statutory law to the court decisions invalidating section 290’s application to persons convicted of nonforcible oral copulation, sodomy, and sexual penetration involving minor victims 14 years of age or older. (Assem. Bill No. 1640 (2013-2014 Reg. Sess.) as amended Apr. 2, 2014, § 2.) In sum, section 290’s present inclusion of nonforcible section 288a violations is not due to the supposed failure of lawmakers to reevaluate the matter.
Hofsheier also reasoned that subjecting section 288a(b)(1) offenders to mandatory registration “cannot be justified by the speculative possibility that members of [that] group are more likely to reoffend than [section 261.5 offenders].” (Hofsheier, supra, 37 Cal.4th at p. 1204.) In this regard, Hofsheier remarked it could “perceive no reason why the Legislature would conclude that persons who are convicted of voluntary oral copulation with adolescents 16 to 17 years old [(§ 288a(b)(1))], as opposed to those who are convicted of voluntary intercourse with adolescents in that same age group [(§ 261.5)], constitute a class of ‘particularly incorrigible offenders’ [citation] who require lifetime surveillance as sex offenders.” (Hofsheier, at pp. 1206-1207.)
There is, in fact, much more than a speculative possibility that sexual predators are more successful in manipulating minors to engage in oral copulation, as opposed to sexual intercourse. Studies indicate that pubescent minors may be more receptive to engaging in oral sex, which does not risk pregnancy and which many such minors believe is lower in risk for sexually transmitted diseases. (E.g., Halpern-Felsher et al., Oral Versus Vaginal Sex Among Adolescents: Perceptions, Attitudes, and Behavior (Apr. 2005) vol. 115, No. 4, Pediatrics 845, currently available online at <http://pediatrics. aappublications.org/content/115/4/845.full.pdf+html> [as of Jan. 29, 2015] (Halpern-Felsher).)[6] As for pedophiles, who, by definition, target prepubescent minors, studies show that, “[t]ypically, pedophiles engage in fondling and *884 genital manipulation more than intercourse,” except in cases of incest, forcible encounters, and when pedophiles prefer older children. (Hall & Hall, A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues (Apr. 2007) 82 Mayo Clinic Proceedings 457, 458, currently available online at <www.mayoclinicproceedings.org/article/ S0025-6196(ll)61074-4/fulltext> [as of Jan. 29, 2015].) In light of the foregoing, the Legislature could plausibly assume that predators and pedophiles engaging in oral copulation have more opportunities to reoffend than those engaging in sexual intercourse, and, for that reason, are especially prone to recidivism and require ongoing surveillance.
Moreover, no one disputes that section 290’s application to section 288a(b)(l) offenses, considered alone, is rationally related to the legislative goals of deterrence, preventing recidivism, and protecting the public. Therefore, the question is not whether such goals would be adequately promoted by allowing discretionary, as opposed to mandatory, registration for such offenses. Instead, the relevant inquiry is whether a legitimate reason exists that permits the Legislature to require registration for nonforcible oral copulation offenses while affording trial courts discretion for unlawful sexual intercourse offenses.
Contrary to Hofsheier's observation, “the nature of the sexual act” is not the “only difference” between unlawful sexual intercourse and nonforcible oral copulation. (Hofsheier, supra, 37 Cal.4th at p. 1200.) Among the various sex offenses, unlawful sexual intercourse is unique in its potential to result in pregnancy and parenthood. The act of intercourse, by itself, nearly always carries this potential, while engaging in oral copulation or other nonintercourse sexual activity, by itself, never does. Given the potential life-altering consequences of intercourse, it may seem, at first blush, anomalous that section 261.5 is one of the only — if not the only — offenses proscribing sexual contact with a minor that is subject to discretionary, as opposed to mandatory, registration. (§ 290.006.)
Though section 261.5 violations may seem just as deserving of mandatory registration as nonforcible oral copulation offenses, the legislative history of section 261.5 dispels any notion that confining the availability of discretionary registration to intercourse offenders has no rational basis. The 1970 legislation that separated the offenses of rape and unlawful sexual intercourse *885 with a female under age 18 — by moving the latter from the general rape statute (§ 261) to section 261.5 — originated with the State Bar of California. (Sen. Bill No. 497 (1970 Reg. Sess.) chaptered as Stats. 1970, ch. 1301, §§ 1, 2, pp. 2405-2406.) In an analysis of that legislation, the State Bar’s legislative representative explained: “When there are consenting near-adults involved, but for some reason the girl’s parents or the Social Welfare Department wants to force the boy to support the child, it is unrealistic to have the connotation of ‘rape’ attached to his crime. Many private employees do not differentiate between ‘statutory rape’ and ‘forcible rape,’ and refuse to hire a ‘rapist.’[7] As a result, the capacity to earn money to support a child is severely handicapped. This bill merely seeks to eliminate this social stigma.” (Bradford, State Bar of Cal. Legis. Rep., analysis for Assem. Com. on Criminal Procedure of Sen. Bill No. 497 (1970 Reg. Sess.) undated, p. 1.) Thus, in separating and renaming the offense of unlawful sexual intercourse, the Legislature sought to eliminate, for section 261.5 offenses, the social stigma associated with the rape label so that offenders could more readily obtain employment and support children conceived as a result of such intercourse. (Bradford, State Bar of Cal. Legis. Rep., analysis for Assem. Com. on Criminal Procedure of Sen. Bill No. 497 (1970 Reg. Sess.), supra, at p. 1; Sen. Com. on Judiciary, analysis of Sen. Bill No. 497 (1970 Reg. Sess.); Sen. Beilenson, sponsor of Sen. Bill No. 497 (1970 Reg. Sess.) letter to Governor, Aug. 26, 1970.) This history confirms that the potential for pregnancy and parenthood has, in fact, influenced legislative decisionmaking regarding unlawful intercourse with minors.
Indeed, more than two decades later, the Legislature made explicit findings that “[illicit sexual activity between adult males and teenage or younger girls in this state is resulting in the nation’s highest teenage pregnancy and birth rate,” and that “[m]any of these adult males are repeat offenders who have fathered more than one child by different teenage mothers, yet accept little or no responsibility for their actions or for the support of their children.” (Stats. 1996, ch. 789, § 2(a), p. 4161.) Emphasizing that “California spent $3.08 billion in 1985 to assist families headed by teenagers,” but “would have saved $1.23 billion in welfare and health care expenses” had parenthood been delayed, the Legislature declared that “[t]he laws prohibiting adults from having sexual relations with persons under the age of 18 years must be more vigorously enforced,” and that “[a]dult males who prey upon minor girls must be held accountable for their conduct and accept responsibility for their actions.” (Id., § 2, subds. (b), (c), p. 4161.) Based on these findings, the Legislature amended section 261.5 to subject adults convicted of sexual intercourse with minors to graduated civil penalties (ranging from $2,000 to $25,000), based on the age difference between the minor victim and the adult *886 offender. (§ 261.5, subd. (e)(1).) Any amounts so recovered must be applied toward recouping the costs in pursuing the penalties, with the remainder deposited in the Underage Pregnancy Prevention Fund. (§ 261.5, subd. (e)(2).) These civil penalties are not applicable to persons convicted of offenses involving sexual contact other than intercourse with minor victims.
Hence, the very real problem of teen pregnancy and its costly consequences, as well as legislative concern that stigmatization might interfere with employment opportunities and the support of children conceived as a result of unlawful intercourse, offer more than just plausible bases for treating section 261.5 offenders differently than other types of sex offenders. Providing for discretion in section 261.5 cases allows the trial court to order registration in appropriate situations, while maintaining flexibility in those cases where, for instance, registration might cause economic or other hardship to a child born to the minor victim and the adult offender.
Additionally, as Hofsheier acknowledged, the Legislature, on at least three separate occasions up to that point, specifically considered, and ultimately rejected, proposed amendments that would have imposed mandatory registration for section 261.5 offenders. (Hofsheier, supra, 37 Cal.4th at p. 1206.) For instance, in 1997 a bill was introduced that would have amended section 290 to add section 261.5 to the list of offenses subject to mandatory lifetime registration. (Assem. Bill. No. 1303 (1997-1998 Reg. Sess.) as introduced Feb. 28, 1997.) In considering this bill, the Legislature expressly questioned whether extending the requirement to section 261.5 offenders might have negative repercussions when voluntary intercourse between individuals in a relationship results in the birth of a child. (Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 1303 (1997-1998 Reg. Sess.) as amended Apr. 16, 1997, p. 4 [“How many teen[] mothers would want the father of their child to plead guilty of statutory rape and be subject to a life time registration requirement?” (some capitalization omitted)].)
Subsequent to Hofsheier, and to this day, the Legislature has not acted to add section 261.5 to section 290’s list of offenses subject to mandatory registration. Because the Legislature has acted purposefully and consistently to preserve discretionary sex offender registration for section 261.5 offenders, we may reasonably infer its public policy concerns would not be served by mandating registration for such offenders in order to cure the constitutional infirmity found by Hofsheier.
In rejecting the potential for pregnancy as a legitimate reason for differentiated treatment of intercourse offenders, Hofsheier observed that “persons convicted of voluntary oral copulation . . . may have also engaged in intercourse (whether they were convicted of it or not) and a pregnancy may *887 have resulted.” (Hofsheier, supra, 37 Cal.4th at p. 1205.) There appears, however, no legal authority suggesting that the same registration consequences are constitutionally required because certain defendants might at times commit both offenses with the same victims.[8]
Finally, “[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.” (Turnage, supra, 55 Cal.4th at p. 77.) “A classification is not arbitrary or irrational simply because there is an ‘imperfect fit between means and ends’ ” (ibid., quoting Heller, supra, 509 U.S. at p. 321), or “because it may be ‘to some extent both underinclusive and overinclusive’ ” (Warden v. State Bar (1999) 21 Cal.4th 628, 649, fn. 13 [88 Cal.Rptr.2d 283, 982 P.2d 154], quoting Vance v. Bradley (1979) 440 U.S. 93, 108 [59 L.Ed.2d 171, 99 S.Ct. 939]). Consequently, any plausible reason for distinguishing between oral copulation and intercourse for purposes of mandatory registration need not exist in every scenario in which the statutes might apply. It is sufficient that the oral copulation activity prohibited by section 288a(b) lacks the same inherent capacity to cause pregnancy as the sexual intercourse activity prohibited by section 261.5.
At bottom, the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses. (Turnage, supra, 55 Cal.4th at p. 74; People v. Wilkinson (2004) 33 Cal.4th 821, 840 [16 Cal.Rptr.3d 420, 94 P.3d 551].) In light of the legitimate purposes of sex offender registration, and the plausible and actual legislative concerns noted above, it cannot be said that the differentiated treatment of section 261.5 and section 288a offenders “so lack[s] rationality” that it constitutes “a constitutionally impermissible denial of equal protection.” (New Orleans v. Dukes (1976) 427 U.S. 297, 305 [49 L.Ed.2d 511, 96 S.Ct. 2513].)[9]
*888 Accordingly, we hereby overrule People v. Hofsheier, supra, 37 Cal.4th 1185, to the extent it is inconsistent with the views expressed herein. We also disapprove those Court of Appeal decisions that applied Hofsheier's rationale — i.e., the absence of a rational basis for distinguishing, as to sex offender registration, between oral copulation with a minor and unlawful sexual intercourse — to other sex offenses involving minors and others. (E.g., People v. Ruffin, supra, 200 Cal.App.4th at pp. 673-675; People v. Thompson, supra, 177 Cal.App.4th at pp. 1430-1431; Luansing, supra, 176 Cal.App.4th at p. 685; Ranscht, supra, 173 Cal.App.4th at p. 1375; In re J.P., supra, 170 Cal.App.4th at pp. 1299-1300; People v. Hernandez, supra, 166 Cal.App.4th at pp. 648-651; People v. Garcia, supra, 161 Cal.App.4th pp. 481-482.)
D. Effect of Overruling Hofsheier
Inasmuch as Johnson’s claim for relief rests entirely on Hofsheier, we conclude, with respect to his section 288a(b)(2) conviction, that there is no violation of his federal and state constitutional rights to equal protection of the laws in the ongoing requirement that he register as a sex offender pursuant to section 290. The question remains whether or not retroactive application of the instant decision is appropriate under the circumstances here.
A decision of a court overruling a prior decision is typically given full retroactive effect. (Barber v. State Personnel Bd. (1976) 18 Cal.3d 395, 400 [134 Cal.Rptr. 206, 556 P.2d 306].) Despite this general rule, the federal and state Constitutions do not prohibit an appellate court from restricting retroactive application of an overruling decision on grounds of equity and public policy. (Forster Shipbldg. Co. v. County of L. A. (1960) 54 Cal.2d 450, 458-459 [6 Cal.Rptr. 24, 353 P.2d 736]; see Woods v. Young (1991) 53 Cal.3d 315, 330 [279 Cal.Rptr. 613, 807 P.2d 455]; accord, Gt. Northern Ry. v. Sunburst Co. (1932) 287 U.S. 358, 364-365 [77 L.Ed. 360, 53 S.Ct. 145].)[10]
*889 We see no reason to deny retroactive application where, as here, a sex offender has taken no action in justifiable reliance on the overruled decision. (Cf. Claxton v. Waters (2004) 34 Cal.4th 367, 378-379 [18 Cal.Rptr.3d 246, 96 P.3d 496].) It was in 1990 that Johnson pleaded guilty to one count of violating section 288a(b)(2) by engaging in oral copulation of a minor under 16 years of age. As part of that plea, Johnson initialed and signed a declaration in which he acknowledged his obligation to register as a sex offender pursuant to section 290. Hofsheier, supra, 37 Cal.4th 1185, was decided in 2006. Clearly, Johnson’s decision to plead and his obligation to register as a sex offender did not result from any reliance on the state of the law as this court articulated it in Hofsheier. In circumstances such as these, there is no unfairness or inequity in rejecting an equal protection challenge based on our overruling of Hofsheier,* [11]
Conclusion and Disposition
Contrary to the dissent’s supposition, this case is not about whether discretionary registration would, or would not, be just as appropriate and effective in nonforcible oral copulation cases as the Legislature has deemed it to be in unlawful sexual intercourse cases. As explained above, the relevant issue is whether the statutory disparity mandating registration for oral copulation offenders (§§ 288a(b), 290), while affording trial court discretion for intercourse offenders (§§ 261.5, 290.006), has a rational basis.
Rather than perpetuate a flawed constitutional analysis that denies significant effect to section 290, we acknowledge that Hofsheier was wrong. Actual and plausible legislative concerns regarding recidivism, teen pregnancy, and the support of children conceived as a result of intercourse provide a rational basis for the difference in registration consequences as between those convicted of unlawful intercourse and those convicted of nonforcible oral copulation. While this court will not condone unconstitutional variances in the statutory consequences of our criminal laws, rational basis review requires that we respect a statutory disparity supported by a reasonably conceivable state of facts. “ ‘ “Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.” ’ ” (FCC v. Beach Communications, Inc. (1993) 508 U.S. 307, 315 [124 L.Ed.2d 211, 113 S.Ct. 2096].)
*890 We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with the views expressed herein.
Cantil-Sakauye, C. J., Chin, J., Corrigan, J., and Elia, J.,* concurred.

 Unless otherwise indicated, all further statutory references are to this code.

 Throughout the Hofsheier opinion, this court referred to the offense defined by section 288a, subdivision (b), as “voluntary oral copulation” and to the offense defined by section 261.5 as “voluntary sexual intercourse” or “unlawful sexual intercourse.” We shall refer to these offenses as “nonforcible oral copulation” and “unlawful sexual intercourse,” with the understanding that such, offenses do not involve the perpetrator’s use of “force, violence, duress, menace, or fear of immediate and unlawful bodily injury” on the victim or another person (§§ 288a, subd. (c)(2), 261, subd. (a)(2)) or other statutory aggravating circumstances (e.g., §§ 288a, subds. (c)(3), (f), (i), (k), 261, subd. (a)(1), (3)-(7)).

 Hofsheier concerned a prior version of section 290, which was repealed and reenacted in 2007. The discretionary registration provision that was included in that prior version now appears in section 290.006, which provides: “Any person ordered by any court to register pursuant to the [Sex Offender Registration] Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration.”
Unlike a person charged with a sex offense enumerated in section 290, a person charged with an offense subject to discretionary registration “may be able to stipulate in a plea bargain that the trial court judge will not order registration.” (Hofsheier, supra, 37 Cal.4th at p. 1198.)

 In People v. Kennedy (2009) 180 Cal.App.4th 403, 409-410 [103 Cal.Rptr.3d 161], moreover, the Court of Appeal indicated that equal protection claims involving section 290 not only require comparison between section 261.5 and the sex offense of which the subject defendant was convicted (there, § 288.2 [distribution of harmful matter to a minor]), but also require comparison and analysis of other sex offenses for which mandatory registration was *879 judicially invalidated (e.g., § 288a(b)(1) [the offense in Hofsheier]). (See People v. Singh (2011) 198 Cal.App.4th 364, 366-367 [129 Cal.Rptr.3d 461]; People v. Thompson, supra, 177 Cal.App.4th at p. 1431.)

 The dissent asserts that the potential impact of Hofsheier’s equal protection analysis is quite limited and suggests that judicial extension of its application has been modest without posing any conundrum. (Dis. opn., post, at pp. 893, 907.) The cases cited above (ante, at p. 878) prove otherwise. Bound by our precedent, the appellate courts have applied Hofsheier to invalidate mandatory registration for several offenses far beyond the narrow circumstances Hofsheier contemplated and, as explained below (post, at pp. 884-888), in contravention of legislative intent. The dissent fails to explain how we are to curb such expansion short of overruling Hofsheier. Indeed, we granted review in this case because the court in Manchel, supra, 163 Cal.App.4th 1108, attempted to narrow Hofsheier’s reach in a manner prompting stark criticism from other appellate courts. The dissent makes no attempt to resolve this issue. Rather, at bottom, it defends Hofsheier’s equal protection analysis as a fair and equitable judicial reform of a registration scheme with which it disagrees. (Dis. opn., post, at pp. 893-895.) Clearly, however, the rational basis standard does not give courts free license to judge the wisdom or desirability of statutes or to act as a super-Legislature. (Estate of *881 Horman (1971) 5 Cal.3d 62, 77 [95 Cal.Rptr. 433, 485 P.2d 785]; accord, Heller v. Doe (1993) 509 U.S. 312, 319 [125 L.Ed.2d 257, 113 S.Ct. 2637] (Heller).)

 This article references a study reflecting that the surveyed adolescents “evaluated oral sex as significantly less risky than vaginal sex on health, social, and emotional consequences” and “believed that oral sex is more acceptable than vaginal sex for adolescents their own age in both dating and nondating situations, [that] oral sex is less of a threat to their values and beliefs, and [that] more of their peers will have oral sex than vaginal sex in the near future.” (Halpern-Felsher, supra, Abstract, at p. 845.)
We note Hofsheier found little relevance in “various media reports that oral copulation among adolescents has increased in recent years because oral copulation involves no risk of pregnancy and has a lesser risk of transmitting HIV,” because such reports apparently *884 discussed “sexual conduct between adolescents, not conduct between adolescents and adults.” (Hofsheier, supra, 37 Cal.4th at p. 1203, fn. omitted.) The Halpern-Felsher article, however, does not indicate its cited survey pertained solely to sexual activity between adolescents, and Johnson points to nothing suggesting that adolescent attitudes and practices would be different with regard to the same sexual conduct between adolescents and adults.

 Read in context, this sentence clearly meant to refer to private employers, not “private employees.”

 In Hofsheier, as here, nothing indicated the defendant engaged in intercourse with his victim. However, if a person were to engage in both oral copulation and unlawful intercourse with a minor, the district attorney would have discretion to prosecute that person for either or both crimes. An exercise of such discretion generally does not violate equal protection, and even without Hofsheier, a person who committed both offenses with the same victim could establish an equal protection violation upon a showing that he or she was singled out deliberately for prosecution on the basis of some invidious criterion and that the prosecution would not have been pursued except for the discriminatory purpose. (See Manduley v. Superior Court, supra, 27 Cal.4th at pp. 568-570.)

 The dissent makes no attempt to demonstrate that Johnson has negated “ ‘every conceivable basis’ ” that might support the challenged statutory disparity. (Heller, supra, 509 U.S. at p. 320; see Turnage, supra, 55 Cal.4th at p. 75.) Instead, the dissent’s defense of Hofsheier rests largely on media and law review articles suggesting that sections 288a, 286, and 290 were intended to discriminate against homosexuals and in the past were discriminatorily enforced in such a manner. We note that 27-year-old Johnson committed his sex offense against a girl *888 under 16 years of age and has made no claim that section 290, which has always been neutral on its face, violates equal protection because of a supposedly disparate impact on homosexuals.

 As respondent observes, sex offender registration is not punishment (In re Alva (2004) 33 Cal.4th 254, 268 [14 Cal.Rptr.3d 811, 92 P.3d 311]), and a person may be required to register for crimes that were committed before they became offenses subject to registration (People v. Castellanos (1999) 21 Cal.4th 785, 788 [88 Cal.Rptr.2d 346, 982 P.2d 211] (lead opn. of George, C. J.); id. at p. 800 (conc. & dis. opn. of Kennard, J.)). As for offenders who entered plea agreements, “the general rule in California is that a plea agreement is ‘ “deemed to incorporate and contemplate not only the existing law but the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy.” ’ ” (Doe v. Harris (2013) 57 Cal.4th 64, 73 [158 Cal.Rptr.3d 290, 302 P.3d 598].) It therefore follows that “requiring the parties’ compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied *889 promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction.” (Id. at pp. 73-74.) Here, however, a legislative change in the law is not at issue. Rather, this court is overruling a prior decision that featured a flawed constitutional analysis having binding legal effect. Accordingly, we may assess whether equity and public policy favor nonretroactive application of today’s decision.

 We need not and do not decide whether today’s decision overruling Hofsheier should be given retroactive application in all cases.

Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.