Filed 6/3/15  P. v. Rosno CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> MARCEL JEROME ROSNO, <br><br> Defendant and Appellant. | F067510 <br><br> (Super. Ct. No. 13CRRP681385) <br><br> **OPINION** |

APPEAL from order of the Superior Court of Fresno County.  W. Kent Hamlin, Judge.

Law Offices of Bruce W. Nickerson and Bruce W. Nickerson for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

A defendant convicted of certain sex offenses must register as a sex offender pursuant to Penal Code section 290.[1] Section 290.5, subdivision (a) provides that some convicted sex offenders may obtain relief from the obligation to register by obtaining a certificate of rehabilitation and pardon (certificate of rehabilitation) pursuant to section 4852.01. Section 4852.01, subdivision (c) permits a person convicted of a felony to file a petition for a certificate of rehabilitation and pardon under various conditions.[2] However, section 4852.01, subdivision (d) precludes persons convicted of several enumerated offenses from petitioning for a certificate of rehabilitation, including individuals convicted of violating section 288 (lewd and lascivious acts with a child).

Appellant Marcel Jerome Rosno filed a petition in the trial court for a certificate of rehabilitation. The petition alleged Rosno was convicted of violation of section 288, subdivision (c)(1), lewd and lascivious conduct with a child of 14 or 15 when the perpetrator is more than 10 years older than the child. The trial court conducted a hearing at which the People appeared and opposed the petition. The trial court rejected Rosno's equal protection argument and denied the petition, concluding, in part, Rosno was not eligible to obtain a certificate of rehabilitation because section 4852.01, subdivision (d) specifically precludes relief for defendants convicted of violating section 288. We find no error and affirm the order.

## DISCUSSION

As he did in the trial court, Rosno argues the trial court violated his constitutional right to equal protection of the laws because a defendant convicted of violating section

---

**1** All statutory references are to the Penal Code.

**2** The conditions specified in section 4852.01, subdivision (c) are (1) the accusatory pleading must first be dismissed pursuant to section 1203.4, (2) the petitioner may not have been incarcerated in any penal institution since the accusatory pleading was dismissed, (3) the petitioner cannot be on probation for the commission of any other felony, and (4) the petitioner presents evidence he or she has lived in the state for the five years preceding the filing of the petition.

261.5, subdivision (d), nonforcible intercourse with a victim under age 16 when the perpetrator is over 21, is similarly situated, and he or she is not prevented from obtaining a certificate of rehabilitation by section 4852.01, subdivision (d).

"'""The concept of the equal protection of the laws compels recognition of the proposition that persons similarly situated with respect to the legitimate purpose of the law receive like treatment."'" [Citation.] 'The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but 'whether they are similarly situated for purposes of the law challenged.' [Citation.]" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 253.) "In other words, we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws." (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.) We are not concerned with whether the two proposed groups are similarly situated for all purposes, but only whether they are similarly situated for the purposes of the law challenged. (*Cooley, supra,* at p. 253.)

If we conclude two groups are similarly situated for the purposes of the law challenged, we then must decide whether the statute in question violates equal protection principles by treating the two groups disparately. This question is evaluated using one of three levels of analysis depending on the type of issue presented. If the statute involves suspect classifications or touches upon fundamental interests, it is subject to strict scrutiny and can be sustained only if the law is necessary to achieve a compelling state interest. (*Warden v. State Bar* (1999) 21 Cal.4th 628, 640-641.) Classifications based on gender are subject to an intermediate level of review. (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1200 (*Hofsheier*).)

Rosno admits his challenge falls into the third level of analysis, which generally applies to economic and social welfare legislation. This level of review "manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and '[requires] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.' [Citation.]" (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 16.) "Moreover, the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it*." (*Id.* at p. 17.)

In his opening brief, Rosno relied on *Hofsheier* as authority for his argument. While this case was pending, the Supreme Court overruled *Hofsheier* in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871 (*Johnson*). We requested additional briefing from the parties on the effect, if any, of *Johnson* to the issues in this appeal.

We begin with a brief review of *Hofsheier, supra,* 37 Cal.4th 1185. Hofsheier pled guilty to nonforcible oral copulation with a 16-year-old girl in violation of section 288a, subdivision (b)(1). He argued the mandatory requirement that he register as a sex offender pursuant to section 290 violated his constitutional right to equal protection of the laws because another, similarly situated group, those defendants convicted of nonforcible sexual intercourse with a minor 16 years or older (§ 261.5), were not subject to mandatory registration as a sex offender, but instead would be required to register as a sex offender only if the trial court exercised its discretion and ordered him or her to do so.

The Supreme Court held the mandatory registration requirement violated Hofsheier's right to equal protection: "We perceive no reason why the Legislature would conclude that persons who are convicted of voluntary oral copulation with adolescents 16 to 17 years old, as opposed to those who are convicted of voluntary intercourse with adolescents in that same age group, constitute a class of 'particularly incorrigible offenders' [citation] who require lifetime surveillance as sex offenders. We therefore

4.

conclude that the statutory distinction in section 290 requiring mandatory lifetime registration of all persons who, like defendant here, were convicted of voluntary oral copulation with a minor of the age of 16 or 17, but not of someone convicted of voluntary sexual intercourse with a minor of the same age, violates the equal protection clauses of the federal and state Constitutions. This conclusion does not preclude the Legislature from requiring lifetime registration both for persons convicted of voluntary oral copulation and for those convicted of voluntary sexual intercourse, thus treating both groups the same." (*Hofsheier, supra,* 37 Cal.4th at pp. 1206-1207.)

In *Johnson*, *supra,* 60 Cal.4th 871 the defendant pled guilty to nonforcible oral copulation with a minor under 16 in violation of section 288a, subdivision (b)(2). After *Hofsheier* was decided, Johnson filed a petition seeking relief from section 290's mandatory registration requirement. The appellate court concluded the mandatory registration requirement violated Johnson's right to equal protection and remanded the matter to trial court to determine if Johnson should be required to register under the discretionary provisions in section 290.006.

The Supreme Court began its analysis by noting the compelling state interest in preventing recidivism in sex offenders, and the important role mandatory registration plays in achieving that goal. (*Johnson, supra,* 60 Cal.4th at p. 876.) The Supreme Court then explained why the equal protection analysis in *Hofsheier* was "fundamentally flawed," and explained why it now concluded the equal protection clause was not violated in *Hofsheier*. (*Johnson, supra,* at p. 879.)

The Supreme Court identified the issue as follows: "[A]n equal protection challenge can be sustained only if section 261.5 offenders and section 288a offenders are similarly situated, and if the challenger '"negative[s] every conceivable basis"' that might support section 261.5's [nonforcible intercourse with a minor] omission from section 290's list of offenses subject to mandatory registration. [Citations.]" (*Johnson, supra,* 60 Cal.4th at p. 882.) The Supreme Court determined "the nature and potential

5.

consequences of unlawful sexual intercourse provide actual and plausible rationales for the Legislature's omission of section 261.5 from section 290's list of offenses." (*Ibid.*)

Next, the Supreme Court explained that three of the rationales advanced by *Hofsheier* as support for the decision were erroneous. First, the Supreme Court rejected the theory that legislative inattention could explain the failure to remove section 288a's nonforcible offenses from the mandatory registration requirement of section 290. (*Johnson, supra,* 60 Cal.4th at p. 882.)

Second, the Supreme Court found support for the contention that pedophiles who engage in oral copulation, as opposed to sexual intercourse, are more likely to reoffend. "Studies indicate that pubescent minors may be more receptive to engaging in oral sex, which does not risk pregnancy and which many such minors believe is lower in risk for sexually transmitted diseases. [Citation.] As for pedophiles, who, by definition, target prepubescent minors, studies show that, '[t]ypically, pedophiles engage in fondling and genital manipulation more than intercourse,' except in cases of incest, forcible encounters, and when pedophiles prefer older children. [Citation.] In light of the foregoing, the Legislature could plausibly assume that predators and pedophiles engaging in oral copulation have more opportunities to reoffend than those engaging in sexual intercourse, and, for that reason, are especially prone to recidivism and require ongoing surveillance." (*Johnson, supra,* 60 Cal.4th at pp. 883-884)

Third, the Supreme Court concluded there were significant differences between unlawful sexual intercourse, and nonforcible oral copulation. Recognizing that unlawful sexual intercourse could result in pregnancy, the Supreme Court observed that it would appear anomalous that section 261.5 does not require mandatory registration. Nonetheless, the Supreme Court found the possible reasoning of the Legislature in the legislative history of section 261.5.

> "The 1970 legislation that separated the offenses of rape and unlawful
> sexual intercourse with a female under age 18—by moving the latter from

the general rape statute (§ 261) to section 261.5—originated with the State Bar of California. [Citation.] In an analysis of that legislation, the State Bar's legislative representative explained: 'When there are consenting near-adults involved, but for some reason the girl's parents or the Social Welfare Department wants to force the boy to support the child, it is unrealistic to have the connotation of "rape" attached to his crime. Many private employees do not differentiate between "statutory rape" and "forcible rape," and refuse to hire a "rapist." As a result, the capacity to earn money to support a child is severely handicapped. This bill merely seeks to eliminate this social stigma.' [Citation.] Thus, in separating and renaming the offense of unlawful sexual intercourse, the Legislature sought to eliminate, for section 261.5 offenses, the social stigma associated with the rape label so that offenders could more readily obtain employment and support children conceived as a result of such intercourse. [Citation.] This history confirms that the potential for pregnancy and parenthood has, in fact, influenced legislative decisionmaking regarding unlawful intercourse with minors.

"Indeed, more than two decades later, the Legislature made explicit findings that '[i]llicit sexual activity between adult males and teenage or younger girls in this state is resulting in the nation's highest teenage pregnancy and birth rate,' and that '[m]any of these adult males are repeat offenders who have fathered more than one child by different teenage mothers, yet accept little or no responsibility for their actions or for the support of their children.' [Citation.] Emphasizing that 'California spent $3.08 billion in 1985 to assist families headed by teenagers,' but 'would have saved $1.23 billion in welfare and health care expenses' had parenthood been delayed, the Legislature declared that '[t]he laws prohibiting adults from having sexual relations with persons under the age of 18 years must be more vigorously enforced' and that '[a]dult males who prey upon minor girls must be held accountable for their conduct and accept responsibility for their actions.' [Citation.] Based on these findings, the Legislature amended section 261.5 to subject adults convicted of sexual intercourse with minors to graduated civil penalties (ranging from $2,000 to $25,000), based on the age difference between the minor victim and the adult offender. [Citation.] Any amounts so recovered must be applied toward recouping the costs in pursuing the penalties, with the remainder deposited in the Underage Pregnancy Prevention Fund. [Citation.] These civil penalties are not applicable to persons convicted of offenses involving sexual contact other than intercourse with minor victims.

"Hence, the very real problem of teen pregnancy and its costly consequences, as well as legislative concern that stigmatization might

7.

interfere with employment opportunities and the support of children conceived as a result of unlawful intercourse, offer more than just plausible bases for treating section 261.5 offenders differently than other types of sex offenders.  Providing for discretion in section 261.5 cases allows the trial court to order registration in appropriate situations, while maintaining flexibility in those cases where, for instance, registration might cause economic or other hardship to a child born to the minor victim and the adult offender." (*Johnson, supra,* 60 Cal.4th at pp. 884-886.)

Fourth, the Supreme Court noted the Legislature had considered and rejected on at least three separate occasions mandatory registration for individuals who violate section 261.5.  (*Johnson, supra,* 60 Cal.4th at p. 886.)  "Subsequent to *Hofsheier,* and to this day, the Legislature has not acted to add section 261.5 to section 290's list of offenses subject to mandatory registration.  Because the Legislature has acted purposefully and consistently to preserve discretionary sex offender registration for section 261.5 offenders, we may reasonably infer its public policy concerns would not be served by mandating registration for such offenders in order to cure the constitutional infirmity found by *Hofsheier.*" (*Ibid.*)  The Supreme Court concluded that because the Legislature is afforded considerable latitude in determining the consequences of crimes, the inherent capacity to cause pregnancy provided a rational basis for distinguishing between nonforcible oral copulation and unlawful sexual intercourse.  (*Id.* at p. 887)

For these reasons, the Supreme Court overruled *Hofsheier*, and disapproved of the Court of Appeal decisions that applied *Hofsheier*'s rational to other sex offenses involving minors and others, including the four cases on which Rosno relied (*People v. Ranscht* (2009) 173 Cal.App.4th 1369; *In re J.P.* (2009) 170 Cal.App.4th 1292; *People v. Hernandez* (2008) 166 Cal.App.4th 641; and *People v. Garcia* (2008) 161 Cal.App.4th 475).  (*Johnson, supra,* 60 Cal.4th at p. 888.)

As Rosno concedes in his response to our request for additional briefing, *Johnson* has completely eviscerated his argument.  Accordingly, we conclude Rosno's right to equal protection was not violated.

**DISPOSITION**

The order denying Rosno's petition is affirmed.

_____
FRANSON, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
DETJEN, J.