Filed 1/19/21  P. v. Butte CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM FELIX BUTTE, JR.,<br><br>    Defendant and Appellant. | A157561<br><br>(Contra Costa County<br>Super. Ct. No. 05-172131-5) |

William Felix Butte appeals from an order of probation after a jury convicted him of meeting a minor for lewd purposes (Pen. Code, § 288.4, subd. (b); count one), attempting a lewd act upon a child (*id.*, §§ 664, 288, subd. (c)(1); count two), and sending harmful matter to a minor (*id.*, § 288.2, subd. (a)(1); count three).  Butte argues the judgment must be reversed due to purported prosecutorial misconduct and the trial court's exclusion of expert testimony.  We affirm.

### BACKGROUND

### A.

In August 2017, Darryl Holcombe, a Senior Inspector with the Contra Costa County District Attorney's Office, was investigating personal ads posted on Craigslist.  Holcombe discovered an ad, posted by "DaddyW69," entitled "Princess, where are you?"  The text of the ad asked, "Are you tired of

1

boys your age and curious to have a man who makes all the decisions[?]"  It also said, "I am looking for a naughty little girl who likes to be a Princess" and "[a]ge doesn't matter."  The ad implored, "[b]e serious about meeting up, I'm not into endless messages."  The ad also included a cartoon depicting a woman having sex with a man she called "Daddy."

Pretending to be a 15-year-old girl named "Lizzy," Inspector Holcombe responded to the ad, using a messaging application known as KIK.  Shortly after their conversation began, "DaddyW69", who was later determined to be Butte, identified himself as a 48-year-old man.  When Lizzy told Butte that she was 15 years old, Butte replied, "OMG, [love] it."

Inspector Holcombe sent Butte two photos from a female colleague, who was 14 years old when the photos were taken.  Lizzy gave additional indications that she was a teenager, such as telling Butte that she was in math class at school.  Lizzy also told Butte that she liked to play soccer and babysit, and she sent Butte a picture of a school locker.  Butte also asked Lizzy whether she had ever had sex, to which she said "[n]o."  He then asked when she started masturbating.  Throughout the conversation, Lizzy used abbreviations such as "idk" and "lol."  Undeterred, Butte asked Lizzy if she was a police officer (Lizzy responded simply, "A what?"), said he hoped they could meet in person, and asked if she could meet after school.

Butte asked Lizzy several graphically sexual questions, such as whether she would like "Daddy to lick and finger [her] hot little pussy[?]"  He also asked about Lizzy's experience with pornography and instructed her on how to view "daddy-daughter" pornography without her mother seeing it in

her online browsing history. Butte instructed Lizzy to "look at it alone and play with [her] sweet pussy like a good naughty girl."

After Lizzy said she usually went to a Starbucks in a nearby mall after school, Butte suggested that they meet there that afternoon and promised to buy her a Starbucks drink. When Lizzy explained she did not have a car or a ride, Butte assured her, "I have both." To ease Lizzy's qualms about being seen, Butte said, "Well we can bump into each other and I can get two drinks and then you just grab it like you ordered it."

Butte told Lizzy he would teach her how to orally copulate him and asked if she wanted "Daddy to slide [his] think [*sic*] cock in [her] tight pussy[?]" When Lizzy asked if they would need protection, Butte said he had had a vasectomy and would be "gentle." Immediately thereafter, they agreed to meet at the Starbucks at 1:30 p.m., and Lizzy asked Butte to buy her a "carmel [*sic*] frap[.]"

When police officers arrived at the Starbucks at the agreed time, Butte was sitting on a bench outside. Inside the Starbucks, Holcombe found two "carmel [*sic*] frap" drinks waiting at the counter. When Butte was arrested, officers seized his phone and downloaded his KIK chat with Lizzy. Despite the existence of plenty of open parking spaces near the Starbucks, Butte's car was parked some distance away, on the upper floor of the parking lot.

Butte admitted to Inspector Holcombe that he posted the Craigslist ad, asked all the sexual questions reflected in the downloaded messages, and told Lizzy that he wanted to send her links to pornographic videos. Butte was asked, "So what made you want to have sex with a 15-year-old girl?" He responded, "[C]uriosity. Just stupidity." Butte also said, "I was just curious if it really existed." When Inspector Holcombe asked for clarification, Butte

3

said he was curious about whether "[t]hese teenagers . . . actually meet and stuff like that."

## B.

At trial, Butte testified that he did not intend to contact any minors when he posted his ad, but instead was interested in "role-play or chatting online" with women pretending to be "little girls." He did not believe Lizzy was in fact 15 years old because she would not send him a "live photo" or "live chat" with him. Butte had previously met with people after being introduced online. In one instance, the person claimed to be a woman but was in fact a man. On another occasion, a person portrayed herself as "a little girl" but was a 25-year-old woman. Butte also said he had no intention of having sex with Lizzy. He asked Lizzy graphic questions only to determine her identity and not for sexual gratification.

## C.

The jury convicted Butte of meeting a minor for lewd purposes, attempting a lewd act upon a child, and sending harmful material to a minor. At sentencing, the trial court placed Butte on probation for five years, on condition that he serve one year in county jail, complete sex offender treatment, and register as a sex offender (Pen. Code, § 290).

## DISCUSSION

### A.

Butte argues the prosecutor committed misconduct during opening statement that deprived him of a fair trial. We disagree.

#### 1.

The United States Constitution is violated when a prosecutor's conduct is so egregious that it infects the trial with such unfairness as to make the resulting conviction a denial of due process. (*People v. Flores* (2020) 9 Cal.5th

4

371, 403.) A prosecutor's lesser misconduct will violate state law " ' "if it involves the use of deceptive or reprehensible methods to persuade the . . . jury." ' " (*Ibid*.) We review the trial court's determinations on prosecutorial misconduct for abuse of discretion. (*People v. Bennett* (2009) 45 Cal.4th 577, 595.) We will not reverse a judgment for prosecutorial misconduct in an opening statement " 'unless the misconduct was prejudicial or the conduct of the prosecutor so egregious as to deny the defendant a fair trial.' " (*People v. Wrest* (1992) 3 Cal.4th 1088, 1109.)

**2.**

During opening statement, the prosecutor told the jury, "The defense [is] trying to say that [Butte] thought that he was talking to an adult. But the evidence in this case . . . will prove to you beyond a reasonable doubt that the defendant was going there to meet with a 15 year old girl. . . . [¶] In the body of evidence that you're going to receive, a few things will be established beyond all possible doubt. The first of which is . . . the defendant . . . is a pedophile." Defense counsel objected that the statement was argumentative but did not request an admonition. The trial court sustained the objection.

Later that day, defense counsel made an oral motion for mistrial, arguing the prosecutor's "pedophile" comment was incurable misconduct because the prosecutor knew it lacked evidentiary support. Defense counsel also argued the term (pedophile) refers to someone who is sexually attracted to prepubescent children, typically under the age of 13. The prosecutor opposed defense counsel's motion, asserting "[a] pedophile is someone who has a sexual attraction to children. I believe the evidence demonstrates that incredibly clearly."

The trial court denied Butte's motion, explaining that the prosecutor's use of the term "pedophile" in opening statement would not deny Butte a fair

5

trial because the trial court instructed the jury that statements of counsel were not evidence.

**3.**

Butte has not shown prejudicial misconduct.

When a misconduct claim arises from the prosecutor's comments before the jury, the initial question " ' "is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' " (*People v. Adams* (2014) 60 Cal.4th 541, 568.) There are multiple reasonable understandings of the word "pedophile." (See *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 883 [noting that pedophiles "by definition" target prepubescent minors]; Merriam-Webster Dict. Online (2020) <https://www.merriam-webster.com/dictionary/pedophilia#medicalDictionary> [as of Jan. 19, 2021] [defining pedophilia as "sexual perversion in which children are the preferred sexual object"].)

Here, the prosecutor's opening statement made clear this case involved a law enforcement officer posing as a 15-year-old girl; there was no mention of prepubescent children. We find it unlikely that the jury understood the word "pedophile," in this context, to mean Butte was sexually attracted to prepubescent minors. (See *People v. Dykes* (2009) 46 Cal.4th 731, 772 [" 'we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements' "].)

Butte admitted, on cross-examination, that he was aroused by a graphic of a grown man having sex with his daughter. He also posted an ad seeking a "naughty little girl" and sent graphically sexual texts, along with explicit invitations to engage in sexual activity, to someone he believed was a 15-year-old girl. Given this record, we cannot agree with Butte that the

6

prosecutor's use of the word "pedophile" was wholly unsupported. We conclude there was no misconduct.

In any event, the trial court repeatedly instructed the jurors that the attorneys' statements were not evidence and that the jury should decide the case based on the evidence. Given this cautionary instruction and the prosecution's strong case against him, there is no reasonable probability that any fleeting impropriety in the opening statement prejudiced Butte. (*People v. Flores, supra,* 9 Cal.5th at p. 405; *People v. Bennett, supra,* 45 Cal.4th at p. 595 ["When a trial court sustains defense objections and admonishes the jury to disregard the comments, we assume the jury followed the admonition and that prejudice was therefore avoided"].)

## B.

Butte also contends the trial court abused its discretion in excluding, under *People v. Kelly* (1976) 17 Cal.3d 24 (*Kelly*), the opinion testimony of his online communications expert. We find no abuse of discretion. (See *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 [standard of review]; *People v. Richardson* (2008) 43 Cal.4th 959, 1008 [same].)

## 1.

In order to be admissible, expert testimony must "relate to a subject sufficiently beyond common experience as to assist the trier of fact and be based on matter that is reasonably relied upon by an expert in forming an opinion on the subject to which his or her testimony relates." (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1371; accord, Evid. Code, § 801.)[1]

---

[1] Undesignated statutory references are to the Evidence Code.

7

"When admission of expert testimony relating the use of novel scientific methods or techniques is at issue, the proponent of the evidence must demonstrate the technique's reliability through testimony from an expert qualified to opine on the subject. The technique's reliability, in turn, depends on a showing that it has achieved general acceptance among practitioners in the relevant field. Finally, the proponent of the evidence must show any procedures necessary to ensure the technique's validity were properly followed in the given case. [Citation.] The purpose of these threshold requirements—commonly referred to as the *Kelly* test—is to protect against the risk of credulous juries attributing to evidence cloaked in scientific terminology an aura of infallibility." (*People v. Peterson* (2020) 10 Cal.5th 409, 444.) General acceptance means "a consensus drawn from a typical cross-section of the relevant, qualified scientific community." (*People v. Leahy* (1994) 8 Cal.4th 587, 612.)

**2.**

In support of Butte's theory that he had no intent to engage in lewd acts with a 15-year-old, the defense offered the testimony of Professor Jeffrey Hancock. Defense counsel proposed that Hancock was an expert in "online communications."

Before trial, the prosecution moved to exclude Hancock's proposed opinion testimony on the grounds, among others, that it was speculative, the jury was equally qualified to evaluate the communications between Lizzy and Butte, and that the defense could not establish the foundational requirements under *Kelly*.

The trial court held a section 402 hearing. Hancock testified he would opine that a reasonable person would suspect "Lizzy" was not 15 years old. Hancock would not opine that a reasonable person would think Lizzy was

8

over 18 years old. Defense counsel also indicated Hancock would opine that there was insufficient evidence Butte "groomed" Lizzy and that their text conversation, via KIK, was atypical for a "sting operation."

Hancock's opinions were based on "dozens of articles that have examined how people communicate online and the kinds of beliefs people hold when they are attracted to another person online." Hancock had published two articles on the subject, based on his review of over 500 transcripts of online communications between pedophiles and victims that resulted in criminal convictions. Hancock's opinion was also based on a computer-automated analysis of language used, which he said could indicate the age or gender of a person. In addition to the language used by the purported minor, in this particular case Hancock relied on other "characteristics" of the exchange, such as a comparison of Lizzy's indicated school hours to the dismissal time of schools in the area; the fact that schools in the area forbid cell phone use at school; Lizzy's use of some terms that were atypical for a 15-year-old girl; and Butte's repeated requests for live photos.

After reading two of Hancock's published articles, which are not included in the appellate record, the trial court excluded Hancock's testimony, agreeing with the People that *Kelly*'s scientific reliability requirements were unsatisfied. The trial court also ruled that Hancock's proffered opinion that a reasonable person texting with Lizzy would not believe Lizzy was 15 years old—which Hancock arrived at on the basis of Lizzy's school schedule, the district policy regarding use of cell phones at school, and her use of phrases like "kicking it"—was not the proper subject of expert testimony.

**3.**

Butte does not challenge the trial court's application of *Kelly* to this case or argue that Hancock's opinion regarding Lizzy's age would assist the jury (§ 801, subd. (a)). He merely contends the trial court abdicated its gatekeeping role because defense counsel had no opportunity to present evidence to show the reliability of Hancock's technique. Butte is wrong.

Here, the record clearly shows that a section 402 hearing was held to give Butte an opportunity to demonstrate the reliability of Hancock's technique. (See *People v. Peterson, supra,* 10 Cal.5th at p. 444; *Kelly, supra,* 17 Cal.3d at p. 30, italics omitted ["reliability of the method must be established, usually by expert testimony"].) At that hearing, the trial court asked Hancock if he could cite a case or other authority showing general acceptance in the community, but Hancock could not. The trial court also reviewed Hancock's published articles and stated that, in his 2014 article, Hancock conceded his technique was new and not scientifically validated. The court further indicated that Hancock's 2017 article did not claim that his technique had then been scientifically accepted.

By failing to provide us with these articles, Butte has not met his burden on appeal to demonstrate the trial court abused its discretion in concluding the evidence was inadmissible. (See *People v. Whalen* (2013) 56 Cal.4th 1, 85 [appellant's failure to provide an adequate record requires resolution against appellant]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [judgment challenged on appeal is presumed to be correct and appellant bears burden to affirmatively demonstrate error].)

The record before us supports the trial court's conclusion that Butte failed to meet his burden below to show Hancock's techniques were reliable. (See *People v. McWhorter* (2009) 47 Cal.4th 318, 365, 367 [no abuse of

discretion in excluding opinion testimony when *Kelly* foundational requirements not met because expert failed to identify computer software used to enhance images and failed to satisfactorily explain process]; *People v. Dellinger* (1984) 163 Cal.App.3d 284, 293 [expert's opinion testimony erroneously admitted after expert testified she did not know of prior experiments using same technique and "there was no corroborative testimony that this technique was accepted within the scientific community"].)

## DISPOSITION

The judgment is affirmed.

_____
BURNS, J.

We concur:

_____
SIMONS, ACTING P.J.

_____
NEEDHAM, J.

A157561