Filed 2/3/21

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074136 |
| v. | (Super.Ct.No. RIF10003985) |
| TERRENCE TOBERT HARRIS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Meredith S. White and Alana Cohen Butler, Deputy Attorneys General, for Plaintiff and Respondent.

Terrence Robert Harris pled guilty to voluntary manslaughter and attempted murder. He filed a petition under Penal Code section 1170.95 (unlabeled statutory citations are to this code) to vacate those convictions. The trial court denied the petition,

1

concluding that Harris is ineligible for relief under section 1170.95 because he was not convicted of murder. Harris appeals from the trial court's order. Because section 1170.95 does not provide relief for those convicted of voluntary manslaughter and attempted murder, we affirm.

## BACKGROUND

In 2010, Harris was charged along with three other individuals with one count of premeditated first degree murder (§ 187, subd. (a)) in the commission or attempted commission of a robbery (§ 190.2, subd. (a)(17)(A)) and two counts of robbery (§ 211). One year later, an amended complaint filed against Harris included the original charges plus one count of voluntary manslaughter of the same victim in the murder count (§ 192, subd. (a)) and one count of attempted murder of another victim (§§ 187, subd. (a), 664). Harris pled guilty to the two counts of robbery and one count each of attempted murder and voluntary manslaughter in exchange for dismissal of the murder count. The parties agreed to a stipulated prison term of 16 years four months, which the trial court imposed at sentencing.

In 2019, following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), Harris petitioned for resentencing under section 1170.95. The trial court denied the petition, concluding that section 1170.95 provides relief for murder convictions only.

2

DISCUSSION

A.    *Overview of Senate Bill 1437 and Section 1170.95*

"Senate Bill 1437 narrowed the scope of liability for first and second degree murder by altering the doctrines that had allowed convictions for those offenses in the absence of malice.  Effective January 1, 2019, Senate Bill 1437 made that change by amending sections 188 and 189" to provide that only defendants who act with malice can be convicted of murder, subject only to an exception for first degree felony murder, the scope of which has been restricted.  (*People v. Sanchez* (2020) 48 Cal.App.5th 914, 917 (*Sanchez*); *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*).)

"The Legislature also added section 1170.95 to the Penal Code.  That provision creates a procedure for offenders previously convicted of felony murder or murder under a natural and probable consequences theory to obtain the benefits of these changes retrospectively.  If the petitioner makes a prima facie showing of entitlement to relief under section 1170.95, subdivision (a), the petitioner is entitled to receive 'a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been sentenced.'  (§ 1170.95, subd. (d)(1); see also *id.*, subd. (c).)"  (*Sanchez*, *supra*, 48 Cal.App.5th at p. 917; *Gentile*, *supra*, 10 Cal.5th at p. 843.)  Subdivision (a) of section 1170.95 provides that "[a] person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts" when specified conditions are met.

3

B.    *Standard of Review*

"We independently review questions of statutory interpretation. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) In interpreting a statute, our '"fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose."' (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105.) '"Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning."' (*Ibid.*) '"If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history."' (*Id.* at p. 1106.)" (*Sanchez*, *supra*, 48 Cal.App.5th at p. 918.) "It is axiomatic that the ""'language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.'"'" (*Id.* at p. 919.)

C.    *Section 1170.95 Applies to Murder Convictions*

Harris argues that he qualifies for resentencing relief under section 1170.95 as a person who pled guilty to attempted murder and voluntary manslaughter "in order to avoid a murder conviction" under a qualifying theory. (§ 1170.95, subd. (a)(2).) To reach this conclusion, Harris "reads section 1170.95 as containing an ambiguity that he argues must be interpreted in his favor in order to avoid rendering some of the statutory language surplusage, which he claims would create an absurd result." (*Sanchez*, *supra*, 48 Cal.App.5th at p. 917.) This court has already rejected this argument in *Sanchez*, at pages 917-921 with respect to a plea of guilty to voluntary manslaughter. Harris

4

contends that *Sanchez* was wrongly decided. We do not agree and see no reason to depart from our previous holding. In addition, because there is no reason to treat a guilty plea to attempted murder differently from a guilty plea to voluntary manslaughter under the statute, we adopt our reasoning in *Sanchez* and also reject Harris's argument that section 1170.95 relief is available to him as someone who pled guilty to attempted murder to avoid a murder conviction.

Harris also argues that Senate Bill 1437 applies generally to attempted murder convictions. There is currently a split of authority on that issue, with some courts holding that Senate Bill 1437 does not apply to attempted murder at all, some holding that it applies only prospectively, and some holding that it applies both prospectively and retroactively to nonfinal convictions.[1] (See *People v. Love* (2020) 55 Cal.App.5th 273, 278-279 (*Love*) [summarizing the split of authority].) That split of authority is irrelevant in the present case because Harris's attempted murder conviction is final, and section 1170.95 sets forth "the exclusive avenue for retroactive relief under Senate Bill 1437." (*Gentile*, *supra*, 10 Cal.5th at p. 853.) No court has held that Senate Bill 1437 applies retroactively to final convictions of attempted murder.

We therefore do not address any of Harris's arguments about Senate Bill 1437's applicability to attempted murder under the natural and probable consequences doctrine either prospectively or retroactively to nonfinal convictions. Instead, we analyze Senate

---

[1]     The issue of whether Senate Bill 1437 applies to attempted murder liability under the natural and probable consequences doctrine is currently pending review in our Supreme Court. (*People v. Lopez* (2019) 451 P.3d 777 [2019 Cal. Lexis 8414].)

Bill 1437's applicability to final convictions of attempted murder through the sentencing relief procedure set forth in section 1170.95. (*Gentile*, *supra*, 10 Cal.5th at p. 853.) We join the other appellate courts that have concluded that relief under section 1170.95 is not available to those convicted of attempted murder. (See *People v. Larios* (2019) 42 Cal.App.5th 956, 970 (*Larios*), review granted Feb. 26, 2020, S259983; *People v. Alaybue* (2020) 51 Cal.App.5th 207, 222-225 (*Alaybue*); *Love*, *supra*, 55 Cal.App.5th at p. 292; *People v. Medrano* (2019) 42 Cal.App.5th 1001, 1018 (*Medrano*), review granted Mar. 11, 2020, S259948.)

Looking to the plain language of the statute, this court has already held that section 1170.95 applies only to defendants convicted of murder. (*Sanchez*, *supra*, 48 Cal.App.5th at p. 918.) "Section 1170.95 allows '[a] person convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition' to seek to have that 'murder conviction vacated and to be resentenced on any remaining counts' if certain conditions are met. (§ 1170.95, subd. (a).) Subdivision (d) of section 1170.95 reiterates that the available relief under the section is the vacating of a 'murder conviction.' (§ 1170.95, subd. (d)(1)-(2).)" (*Sanchez*, at p. 918.) Section 1170.95 refers exclusively to murder convictions and does not mention voluntary manslaughter or attempted murder. (*Sanchez*, at p. 918; *Love*, *supra*, 55 Cal.App.5th at p. 292; *Larios*, *supra*, 42 Cal.App.5th at p. 969.) Harris argues that because subdivision (a) of section 1170.95 specifies that a person convicted under a qualifying theory *may* petition for relief, the relief is not limited to those persons convicted of murder. The argument fails because the same subdivision provides that the relief petitioners may seek is "to have the

6

petitioner's *murder conviction* vacated." (§ 1170.95, subd. (a), italics added.) No one other than a person convicted of murder could seek to have a "murder conviction vacated." (*Ibid.*) Use of the permissive word "may" in this provision therefore does not indicate that section 1170.95 is not limited to those offenders convicted of murder under a qualifying theory. Instead, it indicates that offenders convicted of murder under a qualifying theory are not required to seek resentencing relief. In sum, as we explained in *Sanchez*, "these 'petitioning prerequisites and available relief all presuppose a murder conviction.' [Citation.] By its plain language, section 1170.95 thus makes resentencing relief available only to qualifying persons convicted of murder." (*Sanchez*, at p. 918; *Love*, at p. 292 [section 1170.95's "mechanism for retroactive relief applies only to persons seeking to vacate a conviction for 'murder'"].) Because Harris was convicted of attempted murder and voluntary manslaughter and not murder, he consequently is not eligible for relief under section 1170.95.

As the petitioner did in *Sanchez*, *supra*, 48 Cal.App.5th at page 918, Harris nevertheless contends that section 1170.95 applies to those convicted of attempted murder or voluntary manslaughter by plea because of an alleged ambiguity in one of the three qualifying conditions that must be met under subdivision (a) of section 1170.95. "One of those conditions requires the petitioner to have been 'convicted of first degree or second degree murder following a trial or *accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder*.' (§ 1170.95, subd. (a)(2), italics added.)" (*Sanchez*, at p. 918.) Like the petitioner in *Sanchez*, Harris maintains that because the plea portion of this condition does not expressly mention that

7

the guilty plea had to be to murder, section 1170.95 must apply to defendants, like him, who pled guilty to attempted murder or voluntary manslaughter to avoid being convicted of murder at trial. (*Sanchez*, at pp. 918-919.) We rejected the same argument in *Sanchez* with respect to voluntary manslaughter and explained: "The argument is unpersuasive because it 'ignores the introductory language in section 1170.95, subdivision (a) that limits petitions to persons "convicted of . . . *murder*."' [Citation.] Subdivision (a) of section 1170.95 provides that '[a] person convicted of felony murder or murder under a natural and probable consequences theory' may petition to have that 'murder conviction vacated' 'when all of the following conditions apply.' (§ 1170.95, subd. (a).) Consequently, only a person who has been 'convicted of felony murder or murder under a natural and probable consequences theory' may petition for relief under section 1170.95 in the first place. (§ 1170.95, subd. (a).) If that prerequisite is not met, then fulfillment of the subparts in subdivision (a) is not relevant." (*Sanchez*, at p. 919.)

Harris further argues that interpreting section 1170.95 as limited to defendants convicted of murder would render most of the language in subdivision (a)(2) surplusage, because it would be unnecessary to distinguish between those convicted by trial and those convicted by guilty plea. We rejected that argument in *Sanchez*, *supra*, 48 Cal.App.5th 914 as well. "Specifying that section 1170.95 applies to murder convictions both by trial and by guilty plea clarifies that it does not matter how the murder conviction was obtained for section 1170.95 to apply. Regardless of whether that clarification was necessary, '"the Legislature may choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision."' [Citation.] Express

8

statutory language defining the class of defendants to whom section 1170.95 applies is not surplusage. [Citation.] Such clarification 'may eliminate potential confusion and avoid the need to research extraneous legal sources to understand the statute's full meaning.'" (*Sanchez*, at p. 919.)

Harris also contends that this interpretation of subdivision (a)(2) of section 1170.95 still renders surplusage the phrase "in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder." We disagree, because we read this statutory language as emphasizing that only these particular types of guilty pleas meet the threshold of eligibility for relief under section 1170.95. As we explained in *Sanchez*, *supra*, 48 Cal.App.5th at page 919, the Legislature is free to "choose to state all applicable legal principles in a statute rather than leave some to even a predictable judicial decision," even if some of those principles are redundant. (*Reno v. Baird* (1998) 18 Cal.4th 640, 658, superseded by statute on another ground in Gov. Code, § 12940, subd. (j)(3).) Moreover, the Legislature may so choose "without fear the courts will find them unnecessary and, for that reason, imbued with broader meaning." (*Ibid.*)

Harris further argues that our analysis wrongly attributes significance to the Legislature's failure to mention offenses other than murder in section 1170.95. (*Sanchez*, *supra*, 48 Cal.App.5th at p. 918.) He contends that the phrase "in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder" in subdivision (a)(2) of section 1170.95 "encompass[es] convictions for the variety of offenses a defendant could plead guilty to in order to avoid a murder conviction." Again, the argument fails because the qualifying condition in subdivision (a)(2) applies only if the

9

offender meets the necessary prerequisite of having been "convicted of . . . murder." (§ 1170.95, subd. (a).)

Like the petitioner in *Sanchez*, Harris further "claims that our interpretation produces an absurd result by allowing more culpable individuals to seek relief under section 1170.95." (*Sanchez*, *supra*, 48 Cal.App.5th at p. 919.) "Thus, the less culpable defendant, that is, the one who was offered a plea to voluntary manslaughter or attempted murder rather than murder," cannot obtain any relief, but "a more culpable defendant, who was forced to plead to murder," can get the murder conviction vacated. Harris concludes that the Legislature could not have intended "such an illogical result."

We are not persuaded, because such incongruities are inevitable under Senate Bill 1437 and are not limited to homicide offenses. The natural and probable consequences doctrine is a general theory of accomplice liability: "'A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of *any other crime the perpetrator actually commits* [nontarget offense] that is a natural and probable consequence of the intended crime.'" (*People v. Medina* (2009) 46 Cal.4th 913, 920, italics added.) By requiring that a defendant cannot be convicted of murder unless the defendant acted with malice, Senate Bill 1437 eliminated liability for murder based on the natural and probable consequences doctrine. (*Gentile*, *supra*, 10 Cal.5th at p. 839 [Senate Bill 1437 "bars a conviction for first or second degree murder under a natural and probable consequences theory"]; *id.* at pp. 846, 847-848.) But the Legislature left the natural and probable consequences doctrine intact as to every other crime. As a result, section 1170.95 will provide relief to defendants convicted of murder on a natural and

10

probable consequences theory but will not provide relief to defendants convicted of lesser crimes on the same theory. We cannot infer from the alleged absurdity of such disparate treatment that the Legislature actually intended to provide relief as to the lesser crimes as well. "When the Legislature reforms one area of the law, it is not required to reform other areas of the law. [Citation.] It may elect to make reforms "'"one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.'"''" (*People v. Cervantes* (2020) 44 Cal.App.5th 884, 888 (*Cervantes*).)

For all of these reasons, we conclude that section 1170.95 relief is not available to those offenders convicted of attempted murder, by guilty plea or otherwise, or to those offenders convicted of voluntary manslaughter. "Because section 1170.95 is clear and unambiguous, we need not consult its legislative history to determine the statute's meaning." (*Sanchez*, *supra*, 48 Cal.App.5th at p. 920, fn. 3.) We therefore do not consider any of Harris's arguments about the legislative history of Senate Bill 1437. In addition, because we conclude that section 1170.95 relief is not available to those convicted of attempted murder or voluntary manslaughter, we need not and do not address Harris's alternative arguments about the sufficiency of his petition in stating a prima facie case for relief or whether Harris was denied effective assistance of counsel because his appointed attorney failed to file an amended petition.

D.    *Equal Protection*

Harris also argues that section 1170.95 violates equal protection under the state and federal Constitutions unless it is interpreted to allow for resentencing for attempted murder convictions under a qualifying theory and to "provide relief for defendants who

11

pled guilty to another charge to avoid a conviction for murder under a qualifying theory." (Boldface and initial capitalization omitted.) We rejected the same argument as it pertains to guilty pleas to voluntary manslaughter in *Sanchez*, *supra*, 48 Cal.App.5th at pages 920-921, and we see no reason to depart from that analysis here.

When, "as here, a disputed statutory disparity implicates no suspect class or fundamental right, 'equal protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose."'" (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 881 (*Johnson*).) "'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in "'rational speculation'" as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record."' [Citation.] To mount a successful rational basis challenge, a party must '"negative every conceivable basis"' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its '"wisdom, fairness, or logic."'" (*Ibid.*)

To succeed on his equal protection challenge, Harris must first demonstrate that those convicted of murder under a qualifying theory are situated similarly to those who pled guilty to attempted murder or voluntary manslaughter in order to avoid a murder conviction under a qualifying theory, as well as to those tried and convicted of attempted

12

murder or voluntary manslaughter under the natural and probable consequences theory. (*Johnson*, *supra*, 60 Cal.4th at p. 882; *Sanchez*, *supra*, 48 Cal.App.5th at p. 920.)  He then must """"negat[e] *every* conceivable basis"""" for the legislative choice to omit those specified classes of offenders not committed of murder from relief under section 1170.95. (*Johnson*, at p. 882, italics added.)  Assuming for the sake of argument that all these offenders are similarly situated for purposes of section 1170.95, construing section 1170.95 to apply only to murder convictions does not violate equal protection, because we can conceive of at least one rational reason for the Legislature to limit relief under section 1170.95 to those convicted of murder.

As we explained in *Sanchez*, *supra*, 48 Cal.App.5th at page 921, "the Legislature could have reasonably concluded 'that the punishment for voluntary manslaughter was appropriate, but the punishment for murder based on the [natural and probable consequences theory] could be excessive and reform was needed only there.'"  This same analysis applies to punishment for attempted murder, which also carries a lighter punishment than murder.  (*Alaybue*, *supra*, 51 Cal.App.5th at p. 225.)  Given that the punishment for murder is much more severe than the punishment for voluntary manslaughter or attempted murder, "the Legislature could have reasonably concluded that the need to address sentencing reform was more appropriately directed at persons convicted of murder as opposed to attempted murder" or voluntary manslaughter.  (*Id.* at p. 224; *Cervantes*, *supra,* 44 Cal.App.5th at p. 888.)  The Legislature thus could have reasonably chosen to apply its "ameliorative reforms to those instances where it perceived the disconnect between culpability and punishment to be most glaring."

13

(*Alaybue*, at p. 225; *Love*, *supra*, 55 Cal.App.5th at p. 288 ["the Legislature may have wanted to focus on the crime—that is, murder—for which the gap [between the individual's culpability and the resulting sentence] was most pronounced"].) """"The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others.  As long as the Legislature acts rationally, such determinations should not be disturbed.""""  (*Sanchez*, at p. 921.)  Even assuming that the same grounds that support providing resentencing relief to convicted murderers under a qualifying theory would support providing relief to other categories of offenders as well, the Legislature is not required to reform an entire area of law at once.  (*Cervantes*, *supra*, at p. 888.)  The Legislature instead may choose to make incremental steps toward reformation by choosing first to address the problem it has deemed most acute.  (*Ibid.*; *Sanchez*, at p. 921.)  Again, we will not disturb that choice so long as there is a rational relationship because the distinction and some legitimate governmental purpose.

Harris argues that even if the gaps in culpability "could in some abstract way justify the disparate treatment, they cannot in light of the net economic gain from allowing those convicted of attempted murder to be resentenced."  We rejected this argument in *Sanchez*, *supra*, 48 Cal.App.5th at page 921, and the same reasoning applies to those convicted of attempted murder.  In short, whether expanding section 1170.95 relief to those offenders not convicted of murder would result in increased fiscal savings by decreasing incarceration costs does not demonstrate that limiting the relief to

14

convicted murderers is irrational.  (*Sanchez*, at p. 921.)  "That is exactly the type of fiscal line-drawing and policymaking decision that the Legislature is free to make."  (*Ibid.*)

Because a rational basis supports the Legislature's decision to exclude those convicted of attempted murder and voluntary manslaughter from the ambit of section 1170.95, the legislative line-drawing between offenses in section 1170.95 withstands constitutional scrutiny.

DISPOSITION

The trial court's order denying Harris's section 1170.95 petition is affirmed.

CERTIFIED FOR PUBLICATION

MENETREZ
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

15