Filed 10/13/21

# CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>GUADALUPE CONTRERAS, JR.,<br><br>Defendant and Appellant. | F079081<br><br>(Super. Ct. No. MCR051821)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County. Mitchell C. Rigby, Judge.

Proper Defense Law Corporation, Sally S. Vecchiarelli and Justin Vecchiarelli for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and A. Kay Lauterbach, for Plaintiff and Respondent.

-ooOoo-

Defendant Guadalupe Contreras, Jr. was charged with rape and forcible oral copulation, but was convicted by a jury only of misdemeanor battery (Pen. Code, § 242)[1]

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of sections I, III, and IV of the Discussion.

[1] Undesignated statutory references are to the Penal Code.

as a lesser included offense of the rape charge. The trial court placed him on probation and exercised its discretion to require him to register as a sex offender, finding the battery was committed for the purpose of sexual gratification. His opening brief raised four issues on appeal related to the registration requirement, but he withdrew one of the issues in his reply brief. There are thus three issues in this appeal.

Contreras first claims the trial court abused its discretion by failing to state sufficient reasons for requiring him to register as a sex offender under section 290.006. Second, he contends the trial court abused its discretion in ordering registration because there was "no evidence" he was likely to reoffend. And third, he argues the court erred in relying on the results of his pre-sentencing sex offender risk assessment in ordering registration.

We reject all three claims and affirm.

## STATEMENT OF THE CASE

The Madera County District Attorney filed an information charging Contreras with rape (§ 261, subd. (a)(2); count 1) and forcible oral copulation (§ 288a, subd. (c)(2)(A); count 2). A jury found him not guilty as charged in count one, but guilty of the lesser included offense of misdemeanor battery. The jury also acquitted Contreras on count 2.

On March 22, 2019, the trial court sentenced Contreras to three years' probation with one day in local custody, with credit for one day served. The trial court also ordered him to register as a sex offender.

## STATEMENT OF FACTS

### I.     The offense

On October 11, 2014, J., a woman, went to a wedding and drank alcohol. After the wedding, she asked her best friend, Kacie, to pick her up and go to a bar. Kacie

2.

instead invited J. to Kacie's friend Brittany's house in the Madera Ranchos.[2] J. accepted the invitation and Kacie picked her up.

Brittany lived with Contreras, her fiancé. When J. and Kacie arrived, they began taking shots of liquor with Brittany and Contreras. Contreras, Brittany, and Kacie had about four or five shots and J. had about two. About 30 to 45 minutes later, J. went to the bathroom and vomited, and Brittany and Kacie went into the bathroom to help her. Brittany went to her and Contreras's bedroom and got a shirt and sweatpants for J. to change into, J. changed into the new clothes, and J. got into Brittany and Contreras's bed.

Brittany, Kacie, and Contreras sat on the back patio and Brittany fell asleep. Contreras told Kacie something like, "I'm going to get that bitch out of my bed," and went into the house.

J. testified at trial that the next thing she remembered after falling asleep was someone getting into bed with her. She rolled away from the person onto her side, but then felt someone grab her hand and place it on an exposed penis. J. opened her eyes and saw it was Contreras. J. said "no" and tried pulling her hand away. Contreras placed his free hand on the front of J.'s neck. J. described the pressure on her throat as a light clasping that nevertheless felt "awful" and made her freeze from fear. With one hand on her throat, Contreras placed his other hand on her abdomen and pulled her body toward him. J. again said "no." With his body on top of hers, Contreras inserted his penis into J.'s vagina. J. told him to stop. After several minutes of thrusting,[3] Contreras removed his penis and forced J.'s head down toward his penis and inserted it into her mouth. J.

---

[2] Everyone except Contreras will be referred to by an initial or first name to protect identities.

J. had met Brittany two or three times before through Kacie.

[3] J. testified she could not remember how long the thrusting lasted. However, during cross-examination, defense counsel asked J. if it would be accurate to say that it lasted several minutes based on one of J.'s previous statements that is how long it lasted, and J. responded, "I think so."

was crying as Contreras pushed her head toward his penis. She did not remember how long his penis was in her mouth, but said she was scared. Contreras took his penis out of her mouth when Kacie entered the room and yelled, "What the fuck?" Contreras did not ejaculate.

Kacie testified that after Contreras left the patio and went inside, she remained on the patio waiting for Contreras to return until she started to hear both J. and Contreras moaning; the moaning sounded pleasurable. She went into the house, opened the bedroom door and yelled, "What the fuck are you guys doing?" Contreras said, "Fuck," and went to the bathroom. J. hid under the covers and would not let them go as Kacie tried to pull them off of her.

J. eventually got out of the bed and ran out of the house wearing only the t-shirt Brittany had given her; she was not wearing pants. Kacie followed her into the street. J. was crying and saying, "He made me. He made me. I didn't want to. He made me." Kacie put J. in a bush and went in the house to get J.'s things and to call them a ride.[4] J. was gone when Kacie returned. J. walked to her mother's house two miles away. She told her mother what happened and her mother took her to the emergency room, and law enforcement was contacted.

## II. Sentencing

Sentencing was scheduled for January 11, 2019.[5] Ahead of the sentencing hearing, the People and Contreras submitted briefing on the registration issue. The People argued in favor of registration, while Contreras argued the trial court would abuse its discretion by ordering registration. On January 11, the court continued sentencing to March 4 and referred the matter to the probation department to conduct an assessment

---

[4] Brittany testified that "Kacie does not drink and drive …."

[5] Subsequent references to dates are to dates in 2019.

4.

using the State-Authorized Risk Assessment Tool for Sex Offenders ("SARATSO").[6] On February 21, the probation officer submitted her report. The report stated the probation officer assessed Contreras using the STATIC-99R risk assessment scale and the SARATSO for male sex offenders, which measures the statistical risk a defendant will commit further sexual offenses based on characteristics of his personal history and past offenses as they compare with those of known criminal sexual recidivists. (§ 290.04, subd. (b)(1); see *People v. Williams* (2003) 31 Cal.4th 757, 762, fn. 3 [describing purpose of the STATIC-99].)[7]

The report stated the STATIC-99R "has been shown to be a moderate predictor of sexual reoffense potential." Contreras's score of "4" placed him in the "above average risk" category—just one level below the highest category, "well above average risk"—meaning Contreras had an above average risk of being charged or convicted of another sexual offense within five years of being released on probation.

Sentencing was continued again at the defense's request and held on March 22. The court noted at the outset of the hearing it had received the probation officer's supplemental report, which included the results of the STATIC-99R. The court invited argument from the parties. The People argued sex offender registration was appropriate because the evidence showed the battery was

---

[6] Section 1203, subdivision (d), provides, in misdemeanor cases where the probation report recommends that registration be ordered in the court's discretion under section 290.006, that "the court shall refer the matter to the probation officer for the purpose of obtaining a report on the results of the State–Authorized Risk Assessment Tool for Sex Offenders administered pursuant to Sections 290.04 to 290.06, inclusive, if applicable, which the court shall consider."

[7] " 'The STATIC-99R is a revised version of the STATIC-99 that takes into account the age of a sexual offender based on statistics showing the risk of sexual reoffense decreases as the offender ages.' " (*People v. LaBlanc* (2015) 238 Cal.App.4th 1059, 1067, fn. 6.)

committed for a sexual purpose, and also argued the trial testimony and Static-99R results showed Contreras had an above average risk of reoffending.

Contreras's counsel argued that registration was inappropriate and unnecessary, and that the Static-99R was irrelevant in this case because Contreras was not convicted of a sexual offense, only a simple battery. Counsel further stated that the acquittals on the principal offenses (i.e., the rape and oral copulation charges) made it unclear which act the battery conviction was based on, but said that it was the defense's view that conviction had nothing to do with "the grabbing of the penis." Counsel also noted that Contreras had no history of illegal sexual activity and that the offense had occurred almost five years ago by that time. Counsel further argued Contreras should be placed on summary probation, not formal probation, because he had only been convicted of a misdemeanor. As to the term of probation, counsel asked that the court place Contreras on one day of summary probation and terminate probation.

After hearing brief additional comments from the People, the court proceeded to state its view on the registration issue. The court noted it had "read all the submissions" and considered the report on Contreras's SARATSO results. The court stated it disagreed with the defense's position that administering the Static-99R was inappropriate in this case.

The court explained:

> "Having been present during the trial in this matter, I understand that we have one misdemeanor count wherein he was found guilty. However, the acts charged were related—well, based upon the evidence brought forth in the trial, it appears that the acts of the defendant were for purposes of sexual gratification.

> "I am not taking the position that the defendant has a compulsion. I am not sure what that would mean in this particular circumstance. But I do find that the acts of the defendant were for purposes of sexual gratification.

> "With regard, generally, to the issue concerning supervision, I believe supervision in this matter is appropriate for Mr. Contreras. It is a

6.

good thing that he has not reoffended in the recent past, but I think continued supervision with the terms and conditions of probation are absolutely appropriate for this particular defendant.

"And I will order that he also register under [section] 290 as the acts here were for purposes of sexual gratification."

After discussing other sentencing issues with counsel, the court stated:

"The Court has read and considered the report of the probation officer. I have had the input from both the People and the Defense and their written submissions in these matters. I have read and consider all of those as well.

"The intended judgment—well, this comes before the Court on a conviction for—following trial by jury, as to Count 1, Penal Code Section 242, misdemeanor battery. This arose out [of] circumstances where the defendant got into bed with a female and there was unconsented touching at that time.

"So the intended judgment is as follows[.]"

The court proceeded to explain its intended judgment, which included that Contreras be placed on three years' probation under conditions the court stated on the record. Contreras's counsel objected to several conditions, and the court made multiple modifications based on these objections. The court also stated, "As mentioned earlier, there shall be registration under Penal Code Section 290." After stating the fines and fees Contreras would have to pay and noting his one day of custody credit, the following colloquy took place:

"That concludes the intended judgment.

"Comment by the People?

"[THE PROSECUTOR]: People's only comment is that the deputy serve the defendant with the [criminal protective order] in court. And otherwise submitted.

"THE COURT: Thank you very much.

"Comment by the defense?

7.

"[DEFENSE COUNSEL]:  Just to be clear, we had objected to the certain conditions of probation.  I didn't specifically object to the Court ordering as a condition of probation that he register pursuant to [section] 290, and I don't want the record to reflect that somehow we acquiesced in that or otherwise gave up our position on the 290.  Although, you know—

"THE COURT:  Duly noted.  That was opposed before I recited the judgment.  I don't take it that the recitation of the judgment changed your position.

"[DEFENSE COUNSEL]:  All right.  Thank you.

"THE COURT:  All right.  Thank you very much.  So the defendant will be served with the [criminal protective order].

"Also, I have received the Firearms Relinquishment Report indicating that the defendant has appropriately filled out the forms.  And Probation has done their investigation and found no reportable firearms.  I will so find and so order.

"[THE PROSECUTOR]:  Does the Court make its intended judgment its final judgment?

"THE COURT:  Oh.  Thank you.  The Court so orders.  The Court makes its intended judgment its final judgment in the matter.

"All right.  Thank you, Mr. Contreras.

"Thank you, Counsel.

"[THE PROSECUTOR]:  Thank you, Your Honor."

The hearing was concluded.

## DISCUSSION

### I.      Adequacy of statement of reasons for requiring sex offender registration

Contreras contends the trial court abused its discretion by failing to state sufficient reasons on the record for requiring Contreras to register as a sex offender under section 290.006.  He specifically complains the trial court failed to state reasons to support a finding that he was likely to reoffend.  We reject the contention as forfeited.

Section 290 makes sex offender registration mandatory for persons convicted of specified crimes. (§ 290, subds. (b) and (c).) The only offense Contreras was convicted of—a violation of section 242—is not one of those specified crimes. (§ 290, subd. (c) [listing the crimes mandating registration].)

Section 290.006 gives the trial court discretion to order sex offender registration for crimes not subject to mandatory registration. At the time Contreras was sentenced, that section provided in pertinent part: "Any person ordered by any court to register … for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration." (Stats. 2017, ch. 541, § 3.) Because battery is not included in section 290, subdivision (c), registration could only be imposed on a conviction for that offense pursuant to section 290.006.

As explained by the California Supreme Court, in exercising its discretion to order registration under section 290.006, "[T]he trial court must engage in a two-step process: (1) it must find whether the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, and state the reasons for these findings; and (2) it must state the reasons for requiring lifetime registration as a sex offender. By requiring a separate statement of reasons for requiring registration even if the trial court finds the offense was committed as a result of sexual compulsion or for purposes of sexual gratification, the statute gives the trial court discretion to weigh the reasons for and against registration in each particular case." (*People v. Hofsheier* (2006) 37 Cal.4th 1185, 1197 (*Hofsheier*), disapproved of on other grounds in *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888 (*Johnson*).) In determining whether to exercise its discretion in requiring registration under section 290.006, the court must consider all relevant information, including "the likelihood that the defendant will reoffend."

9.

(*People v. Garcia* (2008) 161 Cal.App.4th 475, 483, 485 (*Garcia*), disapproved of on other grounds in *Johnson, supra,* 60 Cal.4th at p. 888; *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1431 (*Thompson*), disapproved of on other grounds in *Johnson, supra,* 60 Cal.4th at p. 888.)

The decision to impose registration pursuant to section 290.006 lies within the trial court's discretion. (See *People v. Eastman* (2018) 26 Cal.App.5th 638, 650.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)

## A. Forfeiture

Contreras forfeited his claim that the trial court failed to state sufficient reasons for requiring sex offender registration. It is well settled "a defendant cannot complain for the first time on appeal about the court's failure to state reasons for a sentencing choice. [Citations.] [Contreras] objected to the registration requirement, but did not object to the court's failure to provide a more complete statement of reasons for its findings and for requiring [sex offender] registration. This routine defect could easily have been prevented and corrected had it been brought to the court's attention." (*People v. Bautista* (1998) 63 Cal.App.4th 865, 868 (*Bautista*).) The forfeiture rule applies as long as the defendant was afforded a meaningful opportunity to object. (*Id.* at p. 869.) "[A] meaningful opportunity to object means that the defendant [must] be given the opportunity to address the court on the matter of sentence and to object to any sentence or condition thereof imposed by the court. In short, it refers to procedural due process …." (*People v. Zuniga* (1996) 46 Cal.App.4th 81, 84.)

Contreras contends in his reply brief the issue was not forfeited because he was deprived of a meaningful opportunity to object to the trial court's alleged failure to state sufficient reasons for requiring registration. We disagree. He was allowed to submit briefing ahead of sentencing on the registration issue, and the court welcomed comment from the parties before making its indicated judgment final. Contreras contends,

however, that the trial court cut off defense counsel while he was explaining an objection. While the court did interrupt defense counsel while he was explaining the defense's objection to the sex offender registration, it is obvious the court interrupted for the purpose of assuring counsel that it understood the defense's objection to the registration requirement and that the issue had been preserved. The court did not interject in a hostile manner. The entire sentencing hearing was cordial between the court and both counsel, and the court in fact had modified probation conditions based on defense counsel's objections. It is thus readily inferable from the circumstances in the record that the trial court would have allowed counsel to lodge an objection to the sufficiency of the court's statement of reasons.

Relatedly, we note that after the trial court's interjection, defense counsel stated, "All right. Thank you." We interpret these words in context as defense counsel indicating he was satisfied the objection to the registration requirement had been preserved for appeal. The context also indicates that defense counsel had nothing further to say. There is nothing in the record suggesting either that defense counsel had something else to add, or that the trial court was losing its patience with defense counsel and would not have welcomed any further comment. In sum, the defense had a meaningful opportunity to object at the sentencing hearing that the trial court did not adequately state reasons for requiring registration under section 290.006. Had he done so, the trial court would have had an opportunity to address Contreras's claim and correct any deficiencies in its statement of reasons for ordering registration. Contreras's failure to timely object forfeits his claim of error. (*Bautista, supra,* 63 Cal.App.4th at p. 868.)

## II.    Evidence of likelihood to reoffend

Contreras next contends the trial court abused its discretion in requiring registration because there was "no evidence" he was likely to reoffend. This contention fails because section 290.006 does not require an explicit finding regarding the defendant's risk of reoffending. The court is only required to find that the defendant

11.

committed the offense as a result of a sexual compulsion or for the purposes of sexual gratification. (§ 290.006.) The court here found Contreras committed the battery for the purpose of sexual gratification, and Contreras does not challenge the sufficiency of the evidence supporting that finding.

We recognize the California Supreme Court's enunciation of section 290's dual purpose: " ' " 'The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future. [Citation.]' " ' [Citations.] In recent years, section 290 registration has acquired a second purpose: to notify members of the public of the existence and location of sex offenders so they can take protective measures. (See Stats. 1996, ch. 908, § 1, subd. (b), p. 5105.)" (*Hofsheier, supra,* 37 Cal.4th at p. 1196.) But our Supreme Court has never imposed an extra-statutory requirement that courts make an explicit finding regarding an offender's potential to reoffend when ordering discretionary registration.

Contreras quotes from *Lewis v. Superior Court* (2008) 169 Cal.App.4th 70 (*Lewis*), in which the Court of Appeal held: "Since the purpose of sex offender registration is to keep track of persons likely to reoffend, one of the 'reasons for requiring registration' under section 290.006 must be that the defendant is likely to commit similar offenses—offenses like those listed in section 290—in the future. (Cf. *People v. Garcia* (2008) 161 Cal.App.4th 475, 484—485….)" (*Id*. at p. 78.) We disapprove of this statement in *Lewis* to the extent it can be interpreted as creating an extra-statutory requirement that sentencing courts make an explicit finding that the defendant is likely to reoffend before ordering discretionary registration under section 290.006. As already mentioned, courts must consider all relevant information, including "the likelihood that the defendant will reoffend," when determining whether to require registration under section 290.006. (*Garcia, supra,* 161 Cal.App.4th 475 at pp. 483, 485; *Thompson, supra,* 177 Cal.App.4th at p. 1431.) But, again, section 290.006 does not expressly require the

12.

court to make a specific finding as to whether a defendant is likely to commit one of the offenses listed in section 290, subdivision (c).

In any event, there was indeed evidence Contreras was likely to reoffend. He scored a "4" on the STATIC-99R, which placed him in the "above average risk" category for reoffending. This evidence belies his claim there was "no evidence" he was likely to reoffend.

## III. Issues concerning SARATSO report

Contreras's third claim is difficult to discern. The point heading reads: "When a defendant is before the trial court on a request for discretionary sex offender registration by the prosecution, the State-Authorized Risk Assessment Tool for Sex Offenders (SARATSO) should not be utilized to determine likelihood to reoffend". Based on this heading, we expected Contreras to argue that we should declare invalid the Penal Code sections requiring the SARATSO be used to evaluate a defendant's likelihood to reoffend whenever the trial court is considering discretionary sex offender registration. But Contreras does not do that. Instead, we perceive Contreras to be arguing that his SARATSO score was improperly calculated.

His concluding words in section III of the Argument section of his opening brief are these: "In this matter, probation provided a conclusory summary of Contreras'[s] evaluation and did not provide the required SARATSO template score report. [Citation.] Without being provided the actual form, the court as well as attorneys have no way of determining if the probation officer accurately reached the concluded score. The score relied on by the court in Contreras'[s] case was improperly calculated and inflated." This seems to capture the essence of his third claim of error.[8] We reject the claim.

_____

[8] We also note the section III heading changes in his reply brief: "The Stat-99R score is unreliable because the probation officer did not follow statutory procedure and the appellant did not forfeit this issue because defense counsel had no knowledge of the error". This heading seems more in line with the substance of his argument.

The probation officer is not required to provide any "template score report" relating to the SARATSO report. Contreras claims: "A report of the pre-sentencing static risk assessment score must be submitted to the judge on the SARATSO template score report form prior to sentencing. (Pen. Code, § 1203 (b)(2)(C), (d).)" This is inaccurate. Neither section 1203, subdivision (b), which governs presentence reports prepared after felony convictions, nor subdivision (d), governing reports prepared after misdemeanor convictions, require that a SARATSO score be provided to the court (or counsel) on any particular template or form. Section 1203, subdivision (d), provides that when a defendant is convicted of a misdemeanor and the probation officer recommends that the court order sex offender registration under section 290.006, the court must refer the matter to the probation officer "for the purposes of obtaining a report on the results of the [SARATSO] administered pursuant to Sections 290.04 and 290.06, inclusive, if applicable, which the court shall consider." Thus, all that is required is that a report on the results be prepared. The statute does not call for a special form or template.

More fundamentally, though, Contreras forfeited any challenge relating to the SARATSO report, including how his score was calculated, because he failed to lodge any objection below. (See *People v. Welch* (1993) 5 Cal.4th 228, 234 (*Welch*) [failure to object at sentencing hearing concerning alleged errors or omissions in presentence report forfeits claim on appeal].)

Lastly, while Contreras does not develop the argument, we would reject any claim that the SARATSO should not be used in determining whether to require registration under section 290.006. Penal Code section 1203, subdivision (b)(2)(C), expressly requires that the SARATSO be used when considering discretionary registration, and Contreras offers no grounds for us to order invalidated that statutory requirement.

## IV.  Source of information in presentence probation report

Contreras asserted a fourth claim of error in his opening brief but withdrew it in his reply brief. We briefly describe it. Contreras contended "the [presentence] report and

recommendation by probation should be based on the transcripts from the trial as opposed to the police investigative reports."  Though the report did not state the source of any information it contained, Contreras asserted it was obvious the information was taken from law enforcement reports and not the trial transcripts.  Contreras did not support this assertion with a record citation, and we do not see any police reports in the record.  In any event, he argued the presentence report was unreliable because of certain factual discrepancies between the probation report's summary of the offense and the trial testimony.

It was unclear whether Contreras was making the universal argument that presentence probation reports should never rely on police reports, or the more provincial argument that the report in his case should not have relied on the available police reports. Whatever his argument is, he did not even claim, much less explain, how the alleged problems with the presentence report in his case affected the trial court's sentencing decision.  That is to say, he did not even mention he was prejudiced.  Though the scope of his argument was unclear, we could reject it for generally applicable reasons.

As a threshold matter, Contreras conceded in his reply brief that he forfeited any challenge to the contents of the  presentence report by failing to lodge an objection below concerning the information in the report or the sources of the information.  (*Welch, supra,* 5 Cal.4th at p. 234; *People v. Evans* (1983) 141 Cal.App.3d 1019, 1021.)

Moreover, his argument would fail on the merits.  To the extent Contreras may have been arguing that police reports may never be relied on in preparing presentence reports, this position is controverted by California Rules of Court, rule 4.411.5, which contemplates that police reports will be used as a source of information for summarizing the crime in the presentence report. (See Cal. Rules of Court, rule 4.411.5(a)(7)(A); *People v. Valdivia* (1960) 182 Cal.App.2d 145, 148 ["A probation officer could not make an investigation and report of the nature required by Penal Code, section 1203, if restricted to the rules of evidence.  Much of the prior record and history of a defendant, as

well as the circumstances surrounding the crime, are hearsay and can be investigated and reported upon only by the use of hearsay information"].)

Next, even were we to agree the presentence report in this case was so rife with inaccurate information that it would have been error for the trial court to rely on it, the record does not show the trial court in fact relied on it. The record shows the trial court "read and considered" the probation report, which it was obligated to do, but that does not mean the court relied on it for any reason. The court could have wholly disregarded the report as unreliable. Because the record is silent on the extent the court may have relied on the report, we must presume, in the absence of evidence to the contrary, the trial court properly performed its official function and disregarded any factual discrepancies or other improper material in the report. (*People v. Barber* (2020) 55 Cal.App.5th 787, 814.) Forfeiture aside, this presumption would have precluded a finding of reversible error.

**DISPOSITION**

The judgment is affirmed.

SNAUFFER, J.

WE CONCUR:


HILL, P. J.


SMITH, J.