Filed 2/13/25  P. v. Slaughter CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062841 |
| v. | (Super. Ct. No. FSB701492) |
| KEITH SLAUGHTER, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of San Bernardino County, Ronald M. Christianson, Judge. (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Felicity Senoski and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

Defendant Keith Slaughter, Jr., appeals the trial court's order denying, at the prima facie stage, his petition for resentencing on his attempted murder convictions pursuant to Penal Code section 1172.6.[1] Slaughter acknowledges section 1172.6 applies on its face only to attempted murder based on the natural and probable consequences doctrine and that the jury was not instructed on that theory. Nevertheless, he asks us to construe section 1172.6 to allow defendants who were prosecuted for attempted murder on *any* theory of imputed malice to seek relief under section 1172.6. We decline Slaughter's invitation to rewrite the statute. Consistent with *People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*) and *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865, we conclude that section 1172.6 applies by its express terms only to attempted murders based on the natural and probable consequences doctrine and Slaughter therefore is not entitled to relief as a matter of law. We also reject Slaughter's equal protection challenge to section 1172.6. Accordingly, we affirm.

---

[1] All further statutory references are to the Penal Code.

PROCEDURAL HISTORY

I.

THE UNDERLYING CASE[2]

In late May 2006, Slaughter, an active member of a criminal street gang, was one of three individuals seen firing shots from a car outside a home where an informal group was gathered. A 14-year-old boy was shot in the head and killed, and at least four other individuals were shot and injured. Sixteen bullets struck the home. Early the next year, Slaughter was identified as the driver of the vehicle from which shots were fired at an individual.

Following a jury trial in 2008, Slaughter was convicted of one count of murder, 12 counts of attempted murder, two counts of making criminal threats, one count of assault with a semiautomatic firearm, one count of shooting at an inhabited dwelling, and one count of the unlawful driving or taking of a vehicle.[3] He was sentenced to 295 years to life.

On appeal, this court reversed Slaughter's convictions for making

---

[2] We derive our factual and procedural background of this case from the nonpublished opinion issued by another panel of this court on the direct appeal from Slaughter's conviction. (*People v. Slaughter* (Aug. 23, 2010, G041573) [nonpub. opn.]; see *People v. Lewis* (2021) 11 Cal.5th 952, 972 (*Lewis*) [appellate opinion generally part of record of conviction as applied to section 1172.6 proceedings].) We reference the factual portion only "for background purposes and to provide context for the parties' arguments." (*People v. Flores* (2022) 76 Cal.App.5th 974, 978, fn. 2.) To the extent necessary to render our decision, we consider the procedural history of the prior appeal, as permitted by the statute. (§ 1172.6, subd. (d)(3).)

[3] Some of these counts involved other crimes committed by Slaughter that are unrelated to the attempted murder convictions at issue in this appeal.

3

criminal threats, modified the judgment to reflect convictions for attempted criminal threats on those counts, reversed the true finding of great bodily injury on one of the attempted murder counts, and remanded the case for resentencing. In all other respects, the judgment was affirmed.[4]

## II.

### PETITION FOR RESENTENCING AT PRIMA FACIE STAGE

In March 2022, Slaughter filed a petition for resentencing, alleging he was eligible for relief under section 1172.6 and requesting appointment of counsel. Slaughter's petition alleged that "[an] . . . information . . . was filed against [him] that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine." The petition further alleged Slaughter was convicted of murder and attempted murder following a trial and "could not presently be convicted of murder or attempted murder because of changes made to Penal Code [sections] 188 and 189, effective January 1, 2019."

On May 9, 2023, following appointment of counsel, briefing, and a hearing on the matter, the trial court denied the petition as to both the murder and attempted murder convictions. The court considered, as part of the record of conviction, this court's prior opinion (*People v. Slaughter, supra,* G041573) and the jury instructions and verdict form from Slaughter's trial.

---

[4] Upon remand, the trial court resentenced Slaughter to prison for a determinate term of 94 years and an indeterminate term of 176 years and eight months to life.

In denying the petition, the court found the jury was not instructed on any theory that would entitle Slaughter to relief under the statute.

Slaughter timely appealed.

## DISCUSSION

On appeal, Slaughter challenges the trial court's denial of his petition for resentencing only as to the attempted murder convictions. Slaughter does not challenge the trial court's ruling denying his petition as to the murder conviction.

## I.

### APPLICABLE LEGAL AUTHORITY

In 2008, when Slaughter was charged with murder and multiple counts of attempted murder, the law permitted the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine, and attempted murder under the natural and probable consequences doctrine. With respect to attempted murder under the natural and probable consequences doctrine, a person who ""knowingly aid[ed] and abet[ted] criminal conduct [was] guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commit[ted] [nontarget offense] that [was the] natural and probable consequence of the intended crime. The latter question [was] not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable. [Citation.]" [Citation.] Liability under the natural and probable consequences doctrine "[was] measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted." [Citation.]'" (*People v. Favor* (2012) 54 Cal.4th 868, 874.)

After Slaughter's conviction and sentencing, the law changed. Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017–2018 Reg. Sess.), which amended sections 188 and 189—the laws pertaining to felony murder and murder under the natural and probable consequences doctrine—"to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) The legislation also enacted former section 1170.95, which provides a procedure to petition for retroactive relief for those who could not now be convicted because of changes to sections 188 and 189. (See *Lewis, supra,* 11 Cal.5th at p. 957.)

Then, effective January 1, 2022, the Legislature passed Senate Bill No. 775 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), which amended section 1170.95[5] "to allow persons convicted of 'attempted murder under the natural and probable consequences doctrine' and manslaughter (in addition to those convicted of murder) to seek relief from their convictions." (*Coley*, *supra*, 77 Cal.App.5th at p. 544.)

As the law now stands, a petition under section 1172.6 may be filed by "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine,* or manslaughter . . . ." (§ 1172.6, subd. (a), italics added.) The allegations of the

---

[5] Former section 1170.95 was renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer throughout this opinion to section 1172.6.

petition must be accepted as true but, without engaging in factfinding, the trial court may look to the record of conviction in determining whether the allegations have been refuted as a matter of law. (*Lewis, supra*, 11 Cal.5th at pp. 971–972.) The record of conviction includes jury instructions and verdict forms. (*People v. Harden* (2022) 81 Cal.App.5th 45, 50.) Thus, for example, if the record shows the jury was not instructed on any of the theories of liability specified in the statute, the defendant is ineligible for relief as a matter of law. (*Id.* at p. 52.)

If the defendant establishes a prima facie case for relief, the trial court must issue an order to show cause, conduct an evidentiary hearing to decide whether to vacate the conviction, and resentence the petitioner on any remaining counts if it finds the petitioner is entitled to relief. (§ 1172.6, subds. (c) & (d); *Lewis, supra*, 11 Cal.5th at p. 960.) We review de novo the court's prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law. (*Coley, supra,* 77 Cal.App.5th at p. 545.)

II.

SLAUGHTER IS INELIGIBLE FOR RELIEF AS A MATTER OF LAW

Having conducted a de novo review of the record of conviction, we conclude Slaughter is ineligible for resentencing relief under section 1172.6 as a matter of law.

A. *Slaughter's Attempted Murder Convictions Were Not Based on the Natural and Probable Consequences Doctrine*

As to the attempted murder counts, the jury at Slaughter's trial was instructed on theories that Slaughter was the actual perpetrator or a *direct* aider and abettor. The jury was not instructed on the natural and probable consequences doctrine. Accordingly, based on the plain language of section 1172.6, Slaughter is not eligible for relief under the statute as a

7

matter of law. (See *Coley, supra,* 77 Cal.App.5th at p. 548; *People v. Offley* (2020) 48 Cal.App.5th 588, 599 ["if the jury did not receive an instruction on the natural and probable consequences doctrine, the jury could not have convicted the defendant on that basis, and the petition should be summarily denied"].)

Slaughter concedes the record of conviction shows the jury was not instructed on the natural and probable consequences doctrine as to the attempted murder charges. Nevertheless, he asks us to reject the holding in *Coley, supra,* 77 Cal.App.5th 539, that section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine" (*Coley, supra*, at p. 548)—and also to ignore the plain language of the statute—and instead conclude, based on legislative history, that the Legislature intended to allow defendants to seek relief if they were convicted of attempted murder based on *any* theory that imputes malice to a defendant, not just on the natural and probable consequences doctrine.

We reject Slaughter's argument. Section 1172.6 is plain and unambiguous on its face. There is no ambiguity in the statutory language that would permit, much less compel, us to resort to legislative history to determine its meaning. (See *People v. Carter* (1996) 48 Cal.App.4th 1536, 1540 [in interpreting a statute, the court "first look[s] to the words of the statute itself. If those words are not ambiguous, we presume that the Legislature meant what it said and the plain meaning of the statute is controlling"].) By its terms, section 1172.6 applies to only four categories of persons: (1) a person "convicted of felony murder"; (2) a person convicted of "murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime"; (3) a person convicted of "attempted

murder under the natural and probable consequences doctrine"; and (4) a person convicted of "manslaughter." (§ 1172.6, subd. (a).) There is no ambiguity as to the statute's express limitation to defendants who were convicted of attempted murder based on a theory of natural and probable consequences.[6]

Nor is there any basis to conclude, as Slaughter suggests, that inclusion of the phrase "attempted murder under the natural and probable consequences doctrine" (§ 1172.6, subd. (a)) in the statute must have been a "scrivener's error" because the Legislature actually intended for the statute to say attempted murder "'under the natural and probable consequences doctrine *or any other theory under which malice is imputed to a person based solely on their participation in a crime.*'" (Italics added.) Nothing in the plain language of the statute reflects any such intent. Moreover, it would be absurd to ascribe such an intent to the Legislature. (See *People v. Carter*, *supra*, 48 Cal.App.4th at p. 1540 [in construing a statute, courts must avoid an interpretation that would lead to absurd results].) Felony murder principles do not apply to attempted murder; and at the time Senate Bill No. 775 (2021–2022 Reg. Sess.) was enacted, the natural and probable consequences doctrine was the only theory under which malice could be imputed to a

---

[6] Slaughter suggests we must consider the legislative history because a statute must be interpreted "in context" and legislative history is part of that "context." This misstates the law. The "familiar principle[] of statutory construction" that instructs us that we "cannot read the words of a statute in isolation, ignoring their context" (*People v. Carter*, *supra*, 48 Cal.App.4th at p. 1540) is clear that this means "[w]e must read a statute as a whole and attempt to harmonize its elements by considering each clause or section in the context of the overall statutory framework." (*Ibid.*) It is not an open invitation for us to delve into legislative history where the plain language of the statute itself, considered as a whole, reveals no ambiguity.

defendant charged with attempted murder. Attempted murder required proof of "the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) Implied malice did not support an attempted murder conviction. (*People v. Bland* (2002) 28 Cal.4th 313, 327–329.) Accordingly, there is no reason to assume the Legislature intended to apply section 1172.6 to attempted murder convictions based on imputed malice other than under a natural and probable consequences theory.[7]

We agree with *Coley's* conclusion that section 1172.6 "applies by its terms only to attempted murders based on the natural and probable consequences doctrine." (*Coley*, *supra*, 77 Cal.App.5th at p. 548.) Thus, defendant could only be eligible for relief under section 1172.6 if his attempted murder conviction was based on the natural and probable consequences doctrine. It plainly was not.

---

[7] Slaughter does not identify any other imputed malice theories that were applicable to attempted murder charges at the time of the adoption of Senate Bill No. 775 (2021–2022 Reg. Sess.). Rather, his appeal is based on his contention that the jury *in his case* was permitted to impute malice to him without finding he intended to kill every victim listed in the attempted murder counts because of an erroneous instruction on the "kill zone" theory. The kill zone theory is not a basis to impute malice to a defendant based on their participation in a crime. Rather, it is a "theory for establishing [a perpetrator's] *specific intent to kill*." (*People v. Canizales* (2019) 7 Cal.5th 591, 607, italics added.) The kill zone theory permits a jury "to infer a defendant's intent to kill an alleged attempted murder victim from circumstantial evidence (the circumstances of the defendant's attack on a primary target)." (*Id*. at p. 597.) "'[I]n a kill zone case, the defendant has a primary target and reasons [that] he cannot miss that intended target if he kills everyone in the area in which the target is located.'" (*Id*. at p. 607.) Accordingly, to convict a defendant under the kill zone theory, the trier of fact must find that the "defendant intended to kill everyone in the kill zone as a means of killing the primary target." (*Id*. at pp. 607–608, fn. 5.)

*B. Section 1172.6 Does Not Violate Slaughter's Right to Equal Protection*

Slaughter argues the Legislature's application of the phrase "or other theory under which malice is imputed to a person based solely on that person's participation in a crime" in section 1172.6, subdivision (a) only to those convicted of murder—and not to persons convicted of attempted murder—violates the state and federal equal protection rights of defendants prosecuted for attempted murder. We disagree.

"Both the state and federal Constitutions extend to persons the equal protection of law." (*People v. Chatman* (2018) 4 Cal.5th 277, 287; see U.S. Const., 14th Amend.; Cal. Const., art. I, § 7, subd. (a).) California Supreme Court precedent "has not distinguished the state and federal guarantees of equal protection for claims arising from allegedly unequal consequences associated with different types of criminal offenses." (*People v. Chatman, supra,* at p. 287.)

Where the law challenged does not draw a suspect classification or burden a fundamental right, "[w]e find a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose. [Citation.] This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny. Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*People v. Chatman, supra*, 4 Cal.5th at pp. 288–289.)

"[W]hen plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at

11

the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not." (*People v. Hardin* (2024) 15 Cal.5th 834, 850–851.)

Here, we conclude there is a rational basis justifying section 1172.6's disparate treatment of defendants convicted of murder and those convicted of attempted murder. (*People v. Hardin, supra,* 15 Cal.5th at pp. 848–850.) "'The Legislature is responsible for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others. As long as the Legislature acts rationally, such determinations should not be disturbed.'" (*People v. Wilkinson* (2004) 33 Cal.4th 821, 840; see *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887 ["the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses"].)

As discussed above, at the time Senate Bill No. 775 was enacted, natural and probable consequences was the only theory of imputed malice on which the prosecution could seek to convict a defendant accused of attempted murder. Therefore, it was rational for the Legislature not to include the phrase "or other theory under which malice is imputed to a person based solely on that person's participation in a crime" (§ 1172.6, subd. (a)) for attempted murder, but at the same time include it for murder. In addition, the Legislature rationally could have decided to provide the broadest grounds for sentencing relief to those convicted of the crime of murder, which is punished by the longest sentence and where the unfairness of a conviction and sentence based solely on participation in the crime is most acute, while

12

at the same time affording less expansive relief to those convicted of attempted murder.

We conclude section 1172.6 does not violate Slaughter's equal protection rights.

Finally, we decline to reach Slaughter's argument that he is entitled to relief under section 1172.6 because the "kill zone" portion of the attempted murder jury instruction (CALCRIM No. 600) given to the jury at his trial was erroneous. Relying on *Canizales, supra,* 7 Cal.5th 591 and *People v. Mumin* (2023) 15 Cal.5th 176—both cases that post-dated his conviction—Slaughter argues the kill zone instruction impermissibly allowed the jury to convict him of attempted murder based on a determination that he had the intent *to harm* (rather than the intent *to kill*) everyone inside the kill zone as a means of killing the primary target. We need not reach this argument because we have concluded the unambiguous language of section 1172.6 limits relief to defendants convicted of attempted murder based on the theory of natural and probable consequences, and Slaughter indisputably was not convicted on that theory. Thus, his challenge to one of the jury instructions given at his trial is not at issue in this proceeding.[8]

---

[8] We offer no opinion on whether Slaughter could raise this alleged instructional error in a petition for habeas corpus.

## DISPOSITION

The postjudgment order denying Slaughter's petition for resentencing is affirmed.


GOODING, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


MOTOIKE, J.